796 June 30, 2016 No. 42

# IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

RASOOL ISLAM ISLAM,
*Petitioner on Review.*

(CC 130331128; CA A154949; SC S063202)

On review from the Court of Appeals.*

Argued and submitted November 13, 2015.

Emily P. Seltzer, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Michael S. Shin, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Balmer, Chief Justice, Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

WALTERS, J.

The decision of the Court of Appeals is reversed. The judgment of the trial court is reversed, and the case is remanded to circuit court for further proceedings.

_____

* On appeal from Multnomah County Circuit Court, Eric J. Bergstrom, Judge. 269 Or App 22, 344 P3d 22 (2015).

** Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**WALTERS, J.**

Defendant shoplifted 15 pairs of jeans from a Macy's retail department store and was convicted of one count of theft in the second degree. ORS 164.045. Under ORS 137.106(1)(a), the prosecutor sought restitution for Macy's economic damages based on the retail price of the jeans at the time and place of the theft. Defendant argued that restitution instead should be based on the value of the jeans on the wholesale market—the market to which Macy's would resort to replace the jeans—and any lost profits that Macy's could prove resulted from the theft. The trial court granted restitution based on the retail value of the jeans, and the Court of Appeals affirmed. *State v. Islam*, 269 Or App 22, 29, 344 P3d 22 (2015). For the reasons that follow, we conclude that a retail seller of goods that have been stolen may recover, as restitution, the reasonable value of those goods on the market to which the seller would resort to replace those goods at the time and place of conversion, together with any additional losses that the state proves the victim sustained. In this case, because the state did not prove any such additional losses, the victim is limited to restitution in the amount of the reasonable wholesale value of the jeans. We reverse and remand for further proceedings.

Oregon law provides that restitution may be awarded when a defendant has been convicted of a crime that results in economic damages and the state has presented evidence of such damages. The court must enter a judgment "requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court." ORS 137.106(1)(a). As used in that statute, "economic damages" "[h]as the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity." ORS 137.103(2). ORS 31.710(2)(a) defines "economic damages" as follows:

> "'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable

and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

In this court, defendant argues that the victim's economic damages must be measured by what it lost—the jeans—and the cost of replacing them. Defendant focuses on the general phrase "objectively verifiable monetary losses," and, in particular, on the losses described in the last phrase of ORS 31.710(2)(a), describing "reasonable and necessarily incurred costs due to loss of use of property" and "costs incurred for repair or replacement of damaged property." Defendant acknowledges that, in this case, the stolen jeans were not recovered, and thus that the final phrase is inapplicable as the jeans were not "damaged property." Nonetheless, he argues that the proper measure of economic damages for unrecovered stolen goods is the monetary loss represented by their "loss of use," which is, in this circumstance, the cost necessary to replace them. Defendant contends that, when the victim of a theft is a retail seller of goods and is able to replace stolen goods by paying the wholesale price of those goods, the wholesale cost of those goods represents the victim's economic loss. Defendant acknowledges that such a retail seller also may incur additional losses, such as lost profits, but, defendant asserts, those additional losses should not be assumed; they must be proved. In this case, defendant argues, the state failed to prove any such losses, and Macy's was therefore not entitled to recover restitution in a sum greater than the value of the jeans on the wholesale market.[1]

In response, the state argues that the lower courts correctly concluded that the proper measure for economic damages when goods are stolen from a retail seller is the

---

[1] At the restitution hearing, no evidence was presented of the wholesale price at which Macy's had obtained the jeans or the price at which it could replenish its stock. Defendant suggested that a price of $35.98 per pair would be an appropriate estimate of their wholesale value, based on the price at which apparently similar items were listed on an online auction website. Defendant does not contend that Macy's is not entitled to recover at least that wholesale value in restitution.

reasonable market value of the goods at the time and place they were stolen, which, in a shoplifting case, is the price at which the retail seller offers the goods for sale. The state maintains that defendant misapprehends the significance of the reference in ORS 31.710(2)(a) to the "loss of use" of goods or the "costs incurred" for their replacement. Those references, the state argues, are to damages incurred when property has been recovered or damaged, not to damages incurred for goods that have been stolen and not recovered. Furthermore, the state contends, limiting a victim's recovery to the wholesale price of stolen items would not fully compensate the victim, even if the victim also were entitled to recover its lost profits. The state explains that the difference between the wholesale price at which a retailer acquires goods and the retail price for which it sells them is not, as defendant suggests, merely "lost profits"; defendant neglects to account for the costs of bringing the goods to the retail market.

We agree with the parties that the final phrase of ORS 31.710(2)(a)—"reasonable costs incurred for repair or for replacement of damaged property, whichever is less"— applies to "damaged property," not stolen property, and is inapplicable here.[2] As to the phrase "loss of use of property," we take a different view from that of either party. In our view, the phrase "loss of use" is used to describe a specific type of loss—the damages resulting from property being unavailable for a limited period of time—and not the type of loss that occurs when goods are stolen and not recovered.

As we explained in *State v. Ramos*, 358 Or 581, 368 P3d 446 (2016), restitution under ORS 137.106 is informed by principles enunciated in civil cases concerning recoverable economic damages. *See id.* at 594 (legislature's "purpose in creating the restitution procedure as a substitute for a civil proceeding make[s] civil law concepts relevant" to determination of damages for purposes of restitution). And, in civil cases, the phrase "loss of use" is used to describe the damages that result when conduct results in property being temporarily unavailable for use for a limited period of time.

---

[2] We express no opinion as to whether, or how, damages might be measured in situations in which stolen goods are recovered and returned to the victim.

"Temporary injury, or injury which is reasonably susceptible of repair, justifies damages measured by the loss of use or rental value during the period of the injury, or the cost of restoration, or both, depending on the circumstances." *Hudson v. Peavey Oil Company*, 279 Or 3, 10, 566 P2d 175 (1977). *See also Bullock v. Hass*, 280 Or 501, 503-04, 571 P2d 902 (1977) (plaintiff was entitled to "loss of use" damages, measured in terms of lost profits, where defendant's fraud caused delivery truck to be out of commission for six weeks); *Scott v. Elliott*, 253 Or 168, 182, 451 P2d 474 (1969) (in dispute over possession of land, the "measure of damages for the temporary loss of the use of the property is the fair rental value of the property"); *Parker v. Harris Pine Mills, Inc.*, 206 Or 187, 204, 291 P2d 709 (1955) ("Where defendant's wrongful act has deprived plaintiff temporarily of the use and enjoyment of his property, plaintiff is entitled to recover therefor, and is not limited to the mere cost of restoring the property to its former condition." (Citations omitted.)). In using the phrase "loss of use" in ORS 31.710, we think it likely that the legislature meant to address situations concerning temporary interference with or deprivation of property, and not circumstances such as those in this case, in which the deprivation of property is permanent.

More importantly, however, ORS 31.710(2)(a) lists "loss of use" as just one of the "objectively verifiable monetary losses" recoverable in restitution. ORS 31.710(2)(a) defines recoverable "economic damages" to mean "objectively verifiable monetary losses" and states that those losses include, but are not limited to, "loss of use," and other specifically listed losses. Objectively verifiable monetary losses also include monetary losses that a victim could recover if the victim were a plaintiff in a civil action against the defendant. *Ramos*, 358 Or at 593-94.

If the victim in this case were a plaintiff in a civil action against defendant, the victim would have a claim against defendant for conversion. In such an action, Oregon has long followed the rule that "the measure of damages for the conversion of personal property is the reasonable market value of the goods converted at the time and place of conversion with interest thereon from that date." *Hall v. Work*, 223

Or 347, 357, 354 P2d 837 (1960); *see also Swank v. Elwert*, 55 Or 487, 499, 195 P 901 (1910) (citing case law and treatises).[3]

When there is only one market for the sale and purchase of goods at the time and place of conversion, then there will be only one market value. There may, however, be more than one market on which goods are bought and sold at that time and place. For instance, a retail seller may be able to purchase in bulk on a wholesale market for a price that is lower than the price that consumers pay for the same item on the retail market. In that instance, it becomes necessary to decide whether the reasonable value of converted goods is measured by their retail or their wholesale market value.

In answering that question, it is important to remember that even if the wholesale market is the relevant market, an item's reasonable wholesale value will not be the only loss that a victim of theft may recover. The purpose of damages and criminal restitution is to make a victim whole, and a retail seller is entitled to recover the "full" extent of the loss it incurs when its goods are stolen. ORS 137.106(1)(a). Therefore, as defendant acknowledges, a retail seller's recovery is not limited to the market value of stolen goods. The seller also may recover other provable losses, including its lost profits. At least in the abstract, then, either measure of damages—retail value, or wholesale value plus additional losses—could yield similar results. Still, the allocation of the burden of proof may be significant in a particular case, and it is an issue we must resolve. We turn therefore to defendant's additional arguments, which are based on the statutory definition of "economic damages" and defendant's understanding of the common law.

Defendant first argues that the plain meaning of "objectively verifiable monetary losses" as used in ORS 31.710 is "the amount of money that has 'gone out' of the

---

[3] This court has recognized, however, that there may be circumstances in which the market value does not provide a suitable measure for conversion damages. In *Hall*, 223 Or at 362-63, the court explained that, "while market value is ordinarily the measure of damages for conversion, that is because market value is ordinarily just compensation. It is not the exclusive measure, and where market value would not be just compensation, other means may be used to show actual value." (Citations omitted.)

victim's 'possession or control,'" quoting *Webster's Third New Int'l Dictionary* 1338 (unabridged ed 2002), for the definition of "lost." He concludes, therefore, that conversion damages depend solely on the amount that the victim "lost," as measured by victim's out-of-pocket replacement cost for items stolen. His premise, however, is not sound. To have "economic damages" as that term is defined in ORS 31.710(2)(a), a person need not necessarily demonstrate an out-of-pocket loss. *See White v. Jubitz Corp.*, 347 Or 212, 232, 219 P3d 566 (2009) (in tort case, rejecting argument that, for purposes of ORS 31.710, "loss" means that tort victim must "part with money").

Next, defendant cites *Mock v. Terry*, 251 Or 511, 446 P2d 514 (1968), a negligence case in which the court held that the plaintiff, a retail seller, was entitled to recover the value of damaged vehicles on the wholesale market plus other demonstrated losses. In *Mock*, the court explained the reason for choosing that measure of damages:

> "In determining a just measure of damages we have examined the problem from the standpoint of both the plaintiff and defendant.

> "'*** While the fundamental rule of the law is to award compensation, yet rules for ascertaining the amount of compensation to be awarded are formed with reference to the just rights of both parties, and the standard fixed for estimating damages ought to be determined not only by what might be right for an injured person to receive in order to afford just compensation, but also by what is just to compel the other party to pay: ***.' *Hansen v. Oregon-Wash. R. & N. Co.*, [97 Or 190, 201, 188 P 963 (1920)]."

251 Or at 513. In the court's view, measuring a retail seller's loss by the value of the damaged items on the wholesale market plus other provable losses was just because

> "[u]sing retail value as market value would grant the plaintiff recovery for his cost of doing business and a profit. If plaintiff can prove that these amounts would have been realized if defendant had not damaged his property, plaintiff can recover for such items; however, in the absence of such proof, such items of damage are not recoverable."

*Id.*

Defendant also points out that the court's decision in *Mock* is consistent with section 911 of the *Restatement (Second) of Torts* (1979). Section 911 is not specific to the tort of conversion; it is one of the "general statements" concerning damages in tort actions. Section 911 provides that "value means exchange value or the value to the owner if this is greater than the exchange value." Comment e to section 911 provides:

> "*Wholesale or retail value.* From the time when a chattel is manufactured to the time of its actual use, there may be many markets in which it is sold. Thus, different prices are paid by the wholesaler, the retail dealer and the consumer. *Since the measure of recovery is determined by the harm done, the market that determines the measure of recovery by a person whose goods have been taken, destroyed or detained is that to which he would have to resort in order to replace the subject matter. Thus, the consumer can recover the retail price; the retail dealer, the wholesale price.* The manufacturer, who does not buy in a market, receives his selling price. Damages for the profits that the wholesale dealer or the retail dealer would normally anticipate from a sale are not ordinarily allowed."

(Emphasis added.) Defendant argues that section 911 and comment e accord with this court's decision in *Mock* and require reference to the market to which the seller would have to resort to replace the goods, generally the wholesale market.

The state responds that the more appropriate reference is to the measure of damages that would be available in an action for conversion—an intentional tort. That is so, the state submits, because the crime of theft necessarily involves intentional wrongdoing and the measure of damages should be greater than what might otherwise be available for unintentional torts such as negligence. *Mock*, the state points out, was a negligence action. In support of its argument, the state cites the *Restatement* section 901, which indicates that the general principles of tort damages are intended both to provide compensation to wrongdoers and to "punish wrongdoers and deter wrongful conduct." We have no quarrel with that statement of general principles. However, that statement is presumably consistent with the

measure of damages that the *Restatement* provides for conversion actions. The section of the *Restatement* that specifically addresses the damages in a conversion action is section 927(1). That section provides that damages for conversion include the "value" of the property "at the time and place of the conversion." And, as indicated, section 911 comment e defines the term "value" to mean, for a retail seller, the value of goods on the market to which the seller would resort to replace the items. Section 901 of the *Restatement* does not foreclose the use of the wholesale market to determine damages in a conversion action.

Nor do we find the state's reliance on comment i to section 927 of the *Restatement (Second)* persuasive. That comment indicates that when the tortfeasor has disposed of converted goods, the plaintiff "can elect to recover the value of the chattel at the time of the disposition." Thus, if a thief sells stolen goods for more than their market value, that comment would permit damages based on the thief's gain rather than the victim's loss. In this case, we need not decide whether such a measure of damages would be permitted under ORS 137.106(1)(a). Here, the state did not prove that defendant sold the stolen jeans. And, more to the point, comment i provides an alternative measure of damages in special circumstances and does not address the specific issue before us. Our focus is on how the general rule measuring damages by the market value of goods at the time and place of conversion applies when there is more than one market for those goods.

On that question, the state's primary argument is that, when the "place of conversion" is a place where goods are displayed for retail sale, the relevant market is the retail market. In our view, that argument evidences a misunderstanding of the "place of conversion." The "place of conversion" is a geographic location. When more than one market operates at that location, the particular place where an item is displayed does not determine which of those markets is the relevant market. The item may be displayed at a retail facility, but its value may be measured on the retail or wholesale market. We must consult other law to determine which of those markets provides the appropriate starting point in the analysis.

The state's final argument is that other courts have recognized that the retail market is the relevant market when determining the value of stolen goods. None of the cases that the state cites convinces us, however, that our interpretation of the statute at issue in this case is incorrect. In *United States v. Lively*, 20 F3d 193, 203 (9th Cir 1994), the court interpreted a federal restitution statue, and its reasoning is not helpful to us. In *United States v. Robinson*, 687 F2d 359, 360 (11th Cir 1982), and *United States v. Cummings*, 798 F2d 413 (10th Cir 1986), the statutes that the courts interpreted were not restitution statutes. They were statutes that defined theft crimes or their elements and that specifically required reference to the value of stolen items to determine the relevant crime or element.[4]

We conclude, based on *Mock* and the *Restatement*, that the market that must be used to determine the reasonable value of an item stolen from a retail seller is the market to which the seller would resort to replace the stolen goods, generally the wholesale market. Although *Mock* was a negligence case and comment e to section 911 of the *Restatement* applies generally to all torts, the principles on which they rest are equally applicable in this criminal restitution context. To permit the use of the retail market would potentially permit a retail seller to recover more than its actual losses. When a retailer seller recovers the retail value of stolen goods, it recovers not only the wholesale cost of

---

[4] Oregon similarly defines degrees of theft crime based on the value of the items stolen. ORS 164.115(1) provides that for purposes of the theft statutes, "value means the market value of the property at the time and place of the crime * * *." This section was "derived substantially from New York Revised Penal Law § 155.20." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, 139 (July 1970). In *State v. Callaghan*, 33 Or App 49, 57-58, 576 P2d 14, *rev den*, 284 Or 1 (1978), the court applied the test for "market value" set forth in *People v. Irrizari*, 5 NY 2d 142, 182 NYS 2d 361, 364, 156 NE 2d 69, 71 (1959) (Market value "denotes not the value of the goods in the market in which the owner had purchased them or in which he could replace them, but the value in the market in which the goods were being traded, namely, the price at which they would probably have been sold in the regular course of business at the time when and place where they were stolen."). In the present case, we are not called upon to interpret the provisions of ORS 164.115 relating to "market value" for purposes of determining what theft crime has been committed, because that statute, by its terms, applies to statutes that were part of the 1971 criminal code, and ORS 137.106, the restitution statute at issue in this case, was not part of the 1971 criminal code.

those goods, but also the profits it anticipated it would make from the sale of those goods. If the retailer actually loses such profits, it is entitled to recover them. But if the retailer does not lose such profits, then recovery of the retail value of the goods grants the seller more than is just. *Cf. Pearson v. Schmitt*, 259 Or 439, 442, 487 P2d 84 (1971) (to recover lost profits, a party must demonstrate "the existence and the amount of such profits with reasonable certainty" and the factfinder may not "freely speculate as to the amount of damages"). Requiring the retail seller to prove its lost profits is a way of ensuring that a retail seller recovers no more than just compensation for its loss.

To summarize, when goods for sale are stolen from a retail seller and not recovered, those goods are converted, and the measure of "economic damages" for the seller in a restitution proceeding is the same measure of damages that would be available to the seller in a tort action for conversion. That measure of damages is the reasonable market value of the goods converted at the time and place of conversion, and the market that determines that reasonable value is the market to which the seller would resort to replace the stolen goods, generally the wholesale market. The seller also is entitled to recover other "economic damages," including lost profits, but they must be proved. In this case, because the state did not prove that the victim incurred any such additional damages, the victim's recovery is limited to the wholesale value of the jeans.

The decision of the Court of Appeals is reversed. The judgment of the trial court is reversed, and the case is remanded to circuit court for further proceedings.