DEHOOG, P. J.
*364 *582 Defendant appeals a judgment of conviction entered after a jury found him guilty of first-degree theft. He raises two assignments of error on appeal. First, he assigns error to the trial court's ruling allowing a witness to testify about his examination of the stolen property that took place after that property had been unlawfully seized. Second, he assigns error to the trial court's award of restitution. We conclude that any error in admitting the witness's testimony was harmless. But we agree that the trial court used the wrong formula to calculate restitution. Therefore, we vacate the award of restitution, remand for resentencing, and otherwise affirm.
The relevant facts are not disputed on appeal. Detective Carrico of The Dalles Police Department received a tip in 2012 that defendant had a stolen Bobcat tractor on his property. Unsure of whether he could identify the Bobcat, Carrico contacted a local Bobcat dealership. Gordon Myers, a Bobcat representative, explained that there are secret numbers hidden on the machines that can be used to identify a Bobcat even if the identification plate has been removed. In January 2013, Carrico called defendant and asked for his permission to check the serial numbers on the Bobcat. Defendant gave his permission for that search. Carrico, Myers, and another officer, Simonds, went to defendant's house to examine the Bobcat, which was in defendant's back field.
When Myers examined the Bobcat at defendant's house, he noticed that the identification plate had been removed, but he was able to find the manufacturer stamp listing an identification number on the engine block. Upon returning to the Bobcat dealership, Myers searched the records and determined that the registered owner of the Bobcat was Douglas Coverdale.
After Myers had researched the identification number and ownership of the Bobcat, he notified Simonds, who called defendant and told him that the numbers matched a Bobcat that had been reported as stolen. Defendant told Simonds that he had purchased the Bobcat from "FLI," a local landscaping business, approximately 10 years earlier *583 in 2004 and that he had a bill of sale. Simonds testified at a pretrial suppression hearing that he then went to defendant's house and saw that the Bobcat remained in defendant's back field. He decided to seize the Bobcat without first obtaining a warrant. The trial court concluded that the seizure was unlawful, and, for purposes of appeal, the state does not challenge that conclusion.
A couple of weeks later, Simonds called defendant again and asked him to come to the police station to discuss the Bobcat. That interview was recorded and played for the jury at trial. During that interview, defendant told Simonds that he had purchased the Bobcat from Adam Vittoria, who had said that he had permission to sell the Bobcat on behalf of the owner of FLI. Defendant told Simonds that he had given Vittoria $500 for the Bobcat, with the intention that he would make future payments. Defendant did not call FLI to verify that Vittoria had permission to sell the Bobcat. Defendant had gone to high school with Vittoria and knew that he was a "sketchy guy." Shortly after defendant purchased the Bobcat, he lost contact with Vittoria and made no further payments. During the interview, defendant estimated that the value of "a 2004, a 10-year-old Bobcat" would be $8,000, depending on the hours that it had been used.
The state charged defendant with first- *365 degree theft, ORS 164.055.[1] Before trial, defendant moved to suppress the evidence discovered during the second, warrantless, entry *584 onto defendant's property; the resulting seizure of the Bobcat; and "any and all evidence derived from the unlawful search and seizure including, inter alia , defendant's statements and photographs of the tractor." At the hearing on the motion to suppress, the state argued that the exigency exception to the warrant requirement applied, but the court rejected that argument. The court ruled that "the seizure of the Bobcat, for whatever it's worth, would be suppressed." Other than any photographs that might have been taken of the Bobcat, there was no discussion of specific evidence subject to suppression.
The jury found defendant guilty as charged. The trial court sentenced defendant to 18 months' supervised probation and 30 days in jail. The court's decision on restitution was not made at the sentencing hearing. Rather, after receiving memoranda from the state and defendant, the trial court entered an amended judgment imposing $26,697.10 in restitution. The court sent the parties a letter explaining its decision. In that letter, the court, relying on the dates alleged in the indictment, defined the relevant time frame as January 1, 2012 through January 14, 2013, which it said was "13 months and 13 days."[2] The court wrote:
"The victim is entitled to his objectively verifiable monetary losses. ORS 137.103(2)(a), ORS 31.170(2)(a). The economic damages that a court may award as restitution to a crime victim are the economic damages that the victim could recover against the defendant in a civil action for the defendant's conduct. The victim is entitled to damages for loss of use, calculated by rental value, whether or not a substitute was actually rented. Graf v. Don Rasmussen Co. , 39 Or.App. 311, 317-18, 592 P.2d 250 [, rev. den. , 286 Or. 521] (1979).
"The only indication of the value of the loss of use of the Bobcat was that the current cost of renting a replacement is $1,975.00 monthly. I find that restitution should be the reasonable amount to rent that machine for 13 months ($25,675), 13 days ($844.10), plus the towing charge of $178.00. Thus, the total amount of restitution due is $26,697.10."
*585 On appeal, defendant first argues that the trial court erred by allowing Myers to offer an opinion about the value of the Bobcat that relied on his examination of it after the police had unlawfully seized the Bobcat. Defendant relies on both the state and federal exclusionary rule to argue that the testimony should have been excluded. The state responds that defendant failed to preserve this claim of error because defendant did not object to Myers's testimony that he estimated the value of the Bobcat to be $10,000. Instead, defendant argued at trial that Myers should not be allowed to testify about his actual examination of the Bobcat after it had been seized. Even if defendant had preserved the issue, the state argues, the trial court correctly admitted Myers's testimony about the value of the Bobcat. According to the state, despite the unlawful seizure of the Bobcat, the fact that it was in good working order, which largely informed Myers's appraisal, inevitably would have been discovered.
The procedural history relevant to defendant's first assignment of error is as follows.
*366 Myers testified on direct examination that the value of the Bobcat when he examined it in January 2013 was approximately $10,000. He acknowledged that a lot of factors enter into determining value, "but overall, [$10,000 was] a good estimate." Defendant did not object to that testimony. On cross-examination, however, defense counsel asked Myers what factors would affect that estimate. Myers stated that the market, age, and condition would be relevant. Then the following exchange took place:
"[DEFENSE COUNSEL]: How about the working or mechanical condition of the machine, would that-
"[MYERS]: That would be part of the condition, you bet.
"[DEFENSE COUNSEL]: And you didn't have any sort of knowledge at that point in time that you saw the Bobcat what the working condition of it was, correct?
"[MYERS]: When I actually saw it? No.
"[DEFENSE COUNSEL]: So you don't even know if the thing worked.
"[MYERS]: When I actually saw it, no. But later I did pick it up and deliver it to Mr. Coverdale, and then I-
"[DEFENSE COUNSEL]: That's-objection."
*586 Outside of the presence of the jury, defense counsel argued that anything discovered after the unlawful seizure would be inadmissible; therefore, Myers could not testify to the examination that he conducted after the Bobcat was illegally seized. The state responded that it was the unlawful entry onto defendant's property and the seizure of the Bobcat on defendant's property that was suppressed, but that defendant had no right to assert any interest in the Bobcat itself because it did not belong to him. When the trial court asked defense counsel what question he sought to ask Myers, counsel responded:
"It's-it's not really the question that I want to ask. It's the question that I don't want him to testify to. I think that right now, he's testified that he's estimated a $10,000 range for the value of the Bobcat.
"* * * * *
"And that none of the information regarding the condition of the Bobcat that was discovered after the illegal seizure is admissible to prove value. The State has to prove it's worth over a thousand bucks."
In essence, defense counsel sought to impeach Myers's $10,000 valuation, but he did not seek to exclude the $10,000 estimate. The trial court ultimately ruled that the witness could testify as to the "value and condition of the Bobcat when he examined it." Myers then testified on redirect that the Bobcat was in "very good working order" when he examined it, but that he did not conduct a full evaluation to come up with the $10,000 value.
Even assuming that the trial court erred in allowing Myers to testify to the condition of the Bobcat and that defendant's objection properly preserved his challenge on appeal, we conclude that any error is harmless. Article VII (Amended), section 3, of the Oregon Constitution provides, in part:
"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, not-withstanding any error committed during the trial[.]"
*587 Based on this principle, "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). When an error violates a defendant's federal constitutional right, the court may affirm "only when a 'reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " State v. Bray , 342 Or. 711, 725, 160 P.3d 983 (2007) (quoting Delaware v. Van Arsdall , 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ).
Defendant argues that the error was not harmless, because, without the $10,000 valuation, it would be more difficult for the state to prove a value of over $1,000 as required for first-degree theft. That argument is not persuasive. First, defendant did not object to the $10,000 valuation. His objection was instead focused on his ability to impeach that valuation. Therefore, even if the trial court *367 had suppressed Myers's statements about his examination of the Bobcat, the fact that he valued it at $10,000 would still be in evidence.[3] Second, defendant himself told the police that he believed the Bobcat to be worth around $8,000. And that $8,000 valuation by defendant is what the state relied on in closing argument. Given that defendant's own valuation of $8,000 is far above the value of $1,000 that the state must prove for first-degree theft, we are convinced that any error in allowing Myers to testify about his examination of the Bobcat had little likelihood of affecting the jury's verdict. Similarly, based on the record, any error was harmless beyond a reasonable doubt. Therefore, even assuming that the trial court erred in permitting Myers to testify regarding the condition of the Bobcat, there was no reversible error.
Defendant next challenges the trial court's restitution award, arguing that the trial court applied the incorrect formula and incorrectly based the award on damages that Coverdale suffered before defendant gained possession *588 of the Bobcat. In response, the state argues that the trial court applied the correct formula for restitution, but that, in applying that formula, the court used the wrong number of months. Thus, the state appears to acknowledge that, even if we conclude that the trial court's method of calculating restitution was appropriate, we must remand for resentencing. And, to the extent that we conclude that the trial court applied the incorrect formula, the state offers two alternative formulas that the court could use to calculate restitution on remand.
Under ORS 137.106(1)(a), "restitution may be awarded when a defendant has been convicted of a crime that results in economic damages and the state has presented evidence of such damages." State v. Islam , 359 Or. 796, 798, 377 P.3d 533 (2016). ORS 137.106(1)(a) provides, in relevant part:
"If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."
"Economic damages" has the same meaning as provided in ORS 31.710, except that "economic damages" does not include future impairment of earning capacity. ORS 137.103(2)(a). ORS 31.710 defines "economic damages," in relevant part, as
"objectively verifiable monetary losses including but not limited to * * * reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."
There are three prerequisites to imposing restitution: (1) criminal activities, (2) pecuniary damages, and (3) a causal relationship between the two. State v. Dillon , 292 Or. 172, 181, 637 P.2d 602 (1981).
Restitution under ORS 137.106 is informed by principles of recoverable economic damages found in civil cases. Islam , 359 Or. at 800, 377 P.3d 533 (citing *589 State v. Ramos , 358 Or. 581, 594, 368 P.3d 446 (2016) ). Stated differently, "[o]bjectively verifiable monetary losses * * * include monetary losses that a victim could recover if the victim were a plaintiff in a civil action against the defendant." Id. at 801, 377 P.3d 533. The dispute in this case centers on what damages would be available to Coverdale in a civil action against defendant-essentially, what the proper formula is for calculating restitution under these circumstances. Due to the length of time that defendant possessed the Bobcat, we conclude that the appropriate civil action available against him would be for conversion. Therefore, restitution should be calculated based on a conversion theory for recovered property.
As evident from its letter, the trial court applied a "loss of use" theory to calculate restitution based on the cost of renting a Bobcat for the period alleged in the indictment. In civil cases, "loss of use" damages are those caused by property being made *368 temporarily unavailable for use for a limited period of time. Id. at 800, 377 P.3d 533. " 'Temporary injury, or injury which is reasonably susceptible of repair, justifies damages measured by the loss of use or rental value during the period of the injury, or the cost of restoration, or both, depending on the circumstances.' " Id. at 801, 377 P.3d 533 (quoting Hudson v. Peavey Oil Company , 279 Or. 3, 10, 566 P.2d 175 (1977) ). Based on that civil case law, the Islam court determined that, in ORS 31.710, the legislature meant for "loss of use" to address situations involving a temporary interference with or deprivation of property and did not intend it to address situations involving the permanent deprivation of property. Id.
For permanent or long-term deprivation, on the other hand, a conversion-based theory of recovery applies. The tort of conversion is defined as follows:
" '(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
" '(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
" '(a) the extent and duration of the actor's exercise of dominion or control;
*590 " '(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
" '(c) the actor's good faith;
" '(d) the extent and duration of the resulting interference with the other's right of control;
" '(e) the harm done to the chattel; [and]
" '(f) the inconvenience and expense caused to the other.' "
Becker v. Pacific Forest Industries, Inc. , 229 Or.App. 112, 116, 211 P.3d 284 (2009) (quoting Restatement (Second) of Torts § 222A (1965) ). A deprivation does not need to be permanent for a party to obtain relief for conversion; a party may have a claim for conversion even where the property is eventually returned. Id. at 119, 211 P.3d 284.
Generally, in a conversion action, the measure of damages is the reasonable market value of the goods at the time and place of conversion, plus interest. See Islam , 359 Or. at 801, 377 P.3d 533 (citing Hall v. Work , 223 Or. 347, 357, 354 P.2d 837 (1960) ). In conversion cases where the property is recovered, however, the measure of damages is "the value of the property at the time of the conversion, with interest thereon to the trial, less its value at the time of the return, with interest thereon from that date, and not the value of its use during the time it was in the possession of the defendants." Eldridge v. Hoefer , 45 Or. 239, 245-46, 77 P.874 (1904) (emphasis added); see also Becker , 229 Or.App. at 119, 211 P.3d 284 (when a party regains possession of converted property before trial, damages are "ordinarily the value of the chattels at the time that they were taken or retained minus the value of the chattels at the time that the claimant regained possession"). Given the duration of defendant's exercise of dominion over the Bobcat-by his own admission, from 2004 to 2013-a damage award based on a theory of conversion, rather than loss of use, is appropriate. Therefore, the trial court erred in calculating restitution based on loss of use.
Anticipating that conclusion, that restitution in this case must be based on a theory of conversion, the parties dispute what time period the trial court should apply on remand.
*591 As he did at trial, defendant argues that the proper calculation would be the value of the Bobcat when he possessed it in 2012-based on the allegation in the indictment-minus its value when Coverdale regained possession in 2013. In other words, defendant argues that, as the trial court ruled, the indictment is the relevant time period to use for calculating restitution. The state, on the other hand, argues that the relevant time period should begin either when the Bobcat was stolen in 2001 or when defendant admitted to possessing it in 2004. We agree with the state; the relevant time period for calculating restitution is not limited to the indictment in isolation, but also *369 includes the further time that defendant admitted to possessing the Bobcat.
Defendant correctly argues that he cannot be ordered to pay restitution for damages arising out of criminal activity for which he was not convicted or which he did not admit having committed. State v. Dorsey , 259 Or.App. 441, 445-46, 314 P.3d 331 (2013) (citing State v. Seggerman , 167 Or.App. 140, 145, 3 P.3d 168 (2000) ). However, defendant's reliance on Dorsey and State v. Howett , 184 Or.App. 352, 56 P.3d 459 (2002), to argue that restitution can be imposed only for the date range alleged in the indictment is misplaced. It is true that, in Howett , we reversed the trial court's restitution award for money taken outside the five-day period alleged in the indictment. Howett , however, is distinguishable. In reversing, we emphasized that a restitution order must be for damages arising out of criminal activity for which the defendant is convicted or that the defendant admits to committing. Id. at 357, 56 P.3d 459. The defendant in that case had pleaded guilty only to conduct within the confines of the five-day period alleged in the indictment. But in the present case, it is undisputed that defendant admitted to having the Bobcat in his possession beginning in 2004. He, therefore, can be ordered to pay restitution for the entire time of his possession.
Accordingly, the appropriate formula for calculating restitution in this case is as follows: the reasonable market value of the Bobcat when defendant gained possession in 2004 (with interest from that date), less its value when Coverdale recovered the Bobcat in 2013 (again with interest *592 from that date), plus any incidental costs associated with recovering the property, such as the towing charge.
Restitution award vacated; remanded for resentencing; otherwise affirmed.

ORS 164.055 provides, in relevant part:
"(1) A person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015 and:
"(a) The total value of the property in a single or aggregate transaction is $1,000 or more[.]"
ORS 164.015, in turn, provides in relevant part:
"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:
* * * * *
"(5) Commits theft by receiving as provided in ORS 164.095."
ORS 164.095 provides, in relevant part:
"(1) A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft."

As the state points out, January 1, 2012 through January 14, 2013, is 12 months and 13 days, not 13 months and 13 days.

We express no opinion whether defense counsel's attempt to impeach Myers's testimony, based on the absence of evidence that counsel understood to be subject to suppression at defendant's request, should be viewed as "opening the door" to that evidence.