Argued and submitted February 11, affirmed June 17, 2020

STATE OF OREGON,
*Plaintiff,*

*v.*

CODY JOHN DALE PLAGMANN,
*Defendant.*

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN MICHAEL SAMORA,
*Defendant-Appellant.*

Gilliam County Circuit Court
16CR26715; A168028 (Control)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CODY JOHN DALE PLAGMANN,
*Defendant-Appellant.*

STATE OF OREGON,
*Plaintiff,*

*v.*

JUSTIN MICHAEL SAMORA,
*Defendant.*

Gilliam County Circuit Court
16CR29689; A168075

469 P3d 288

Defendants unlawfully killed, or helped others kill, two bighorn sheep. They both pleaded guilty to two counts of "Taking, Angling, Hunting, or Trapping in Violation of Wildlife Law or Rule," ORS 498.002, and the trial court entered a general judgment reflecting those pleas and sentencing both defendants to probation. Following restitution hearings, the trial court entered a supplemental judgment, ordering each defendant to pay $1,522 in restitution. On appeal, defendants challenge the imposition of restitution, arguing that the state did not prove that it suffered economic damages from the loss of the sheep because it neither replaced them nor proved that it suffered an actual loss when the sheep were killed. *Held*: The record adequately supports the trial court's determination that the state suffered economic damages. The state presented evidence from which the factfinder could infer what it would have cost to replace the individual sheep,

had the state chosen to do so, and also the value of the herd of which the sheep were part. Accordingly, the trial court did not err when it imposed restitution.

Affirmed.


John A. Olson, Judge.

Marc D. Brown, Deputy Public Defender, argued the cause for appellants. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Powers, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Affirmed.

## HADLOCK, J. pro tempore

Defendants unlawfully killed, or helped others kill, two bighorn sheep. They both pleaded guilty to two counts of "Taking, Angling, Hunting, or Trapping in Violation of Wildlife Law or Rule," ORS 498.002, and the trial court entered a general judgment reflecting those pleas and sentencing both defendants to probation.[1] Following restitution hearings, the trial court entered a supplemental judgment ordering each defendant to pay "$1,522 in restitution for the illegal take/possession of one bighorn sheep." On appeal, defendants challenge the imposition of restitution, arguing that the state did not prove that it suffered any economic damages from the loss of the sheep, given that the state did not "replace[ ] the two bighorn sheep at issue." In response, the state contends that it presented sufficient evidence to support a finding that the state suffered economic damages when the sheep were killed. We conclude that the record adequately supports the trial court's determination that the state suffered economic damages. Accordingly, we affirm.

To provide context for the parties' arguments, we summarize the pertinent principles governing imposition of restitution in criminal cases, keeping in mind that we are bound by the trial court's factual findings if "there is any evidence in the record to support them" and that we review the ultimate legal determination of whether the legal prerequisites for restitution have been met "for errors of law." *State v. Smith*, 291 Or App 785, 788, 420 P3d 644 (2018).

Crime victims are entitled to receive restitution in the full amount of economic damages caused by defendants'

---

[1] ORS 498.002(1), the statute that defendants acknowledged violating, provides, in part, that "[n]o person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto." Defendants asserted in the trial court that they had not participated in killing the two bighorn sheep at issue, and they claimed that they had only removed parts from sheep that somebody else had already killed. However, following restitution proceedings, the trial court found that the state had presented "sufficient evidence to prove that the defendants took or assisted in the taking of the two bighorn sheep, and did not merely unlawfully possess the bighorn sheep," and the court also referred to defendants as having "unlawfully killed" the sheep. *Cf.* ORS 496.004(16) ("'Take' means to kill or obtain possession or control of any wildlife."). Defendants do not challenge those findings for purposes of this appeal.

crimes. ORS 137.106(1)(a); *see* Or Const, Art I, § 42(1)(d) (a crime victim has "[t]he right to receive prompt restitution from the convicted criminal who caused the victim's loss or injury"). When restitution is sought, the state has the burden of proving "(1) criminal activities, (2) economic damages, and (3) a causal relationship between the two." *State v. Ixcolin-Otzoy*, 288 Or App 103, 104, 406 P3d 100 (2017), *rev den*, 362 Or 699 (2018) (internal quotation marks and citation omitted).

As detailed below, the parties' arguments on appeal center on whether the state met its burden of proving that it suffered economic damages as a result of defendants' crimes. As used in the restitution statute, ORS 137.106, the term "economic damages" generally "means verifiable monetary losses." ORS 31.710(2)(a); *see* ORS 137.103(2)(a) (for purposes of the restitution statute, "economic damages" has the meaning set out in ORS 31.710, with one exception not pertinent here).[2] "Objectively verifiable monetary losses * * * include monetary losses that a victim could recover if the victim were a plaintiff in a civil action against the defendant." *State v. Islam*, 359 Or 796, 801, 377 P3d 533 (2016). For example, if a defendant's crimes would give rise to a conversion claim, then the crime victim is entitled to restitution in an amount equal to the damages that the victim could recover in that kind of civil action. *Id*. at 801-02. The measure of "economic damages" for conversion ordinarily is "the reasonable market value of the goods converted at the time and place of conversion." *State v. Chastain*, 299 Or App 646, 650, 451 P3d 646 (2019), *rev den*, 366 Or 257 (2020) (citations and internal quotation marks omitted). Depending on circumstances, that value sometimes may be calculated by determining what it would reasonably cost the victim to replace the converted property. *Islam*, 359 Or at 806.

---

[2] ORS 31.710(2)(a) provides, in its entirety:

"'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

At the restitution hearing in this case, the state presented a variety of evidence about bighorn sheep in Oregon, none of which defendants challenged. A biologist with the Oregon Department of Fish and Wildlife (ODFW) testified about the agency's management plan for bighorn sheep, which had at one point been extirpated in Oregon. The biologist explained that the state began reintroducing bighorn sheep to Oregon in the 1950s and has managed sheep populations since then. ODFW's efforts include management of species diversity, population, habitat, and disease. Sheep are moved between different populations and herds within Oregon, and some sheep are moved out of state. Bighorn sheep are not "a fast-growing population," and ODFW sometimes augments individual herds.

The sheep that defendants participated in killing were part of what ODFW refers to as "the I-84 herd," and they were of breeding age. ODFW manages the I-84 herd "solely for genetic diversity," using sheep from that herd to "augment populations in other parts of the state and outside of the state if needed." In the weeks preceding the restitution hearing in this case, ODFW had captured some sheep from the I-84 herd and moved them to other locations. The biologist testified about the costs that the agency incurs to capture and transport sheep during that kind of operation, including collaring some of the sheep, taking biological samples for testing, and contracting for helicopter transport. The state also introduced documentary evidence of those costs.

ODFW's budget for managing bighorn sheep comes partly from auctioning and raffling tags for lawful hunting of the sheep. Demand for the tags is high, far exceeding the number of tags issued, and tags that are auctioned sell for thousands of dollars; in 2016, the average amount spent on each tag issued exceeded $9,000. However, hunting is not allowed in the I-84 unit, even with a tag, and defendants' crimes did not affect the number of hunting tags subsequently issued by the state.

In arguing for restitution, the state acknowledged that defendants' taking of the two bighorn sheep had not caused the state to lose revenue from hunting tags. However, the state argued, the trial court could determine the value of

the sheep by determining the cost that ODFW would incur "if it were to try to replace" those sheep. Alternatively, the state suggested that the trial court could assign a value to the sheep that took into account the high price of hunting tags. The state also noted that ODFW's "ability to use the I-84 herd to augment other populations has been affected."

The trial court granted the state's request for restitution and issued a written opinion explaining its decision. Given the lack of an "actual market for the buying or selling of bighorn sheep," the court determined that "the proper metric for establishing restitution in this case" would be replacement cost, based on "the estimated average cost of capturing bighorn sheep and introducing them into the I-84 population." The court calculated that cost as $1,522 per sheep, based on ODFW's evidence of amounts it had recently spent to capture and relocate sheep out of the I-84 population into other herds. In accordance with that determination, the court entered supplemental judgments ordering each defendant to pay $1,522 in restitution.

On appeal, defendants argue that the trial court erred in ordering restitution because the state did not prove that it suffered any economic damages from the loss of the two bighorn sheep from the I-84 herd. Significantly, defendants do not challenge the trial court's calculation of the monetary value of each sheep. Rather, they argue that the trial court's analysis should not have reached the point of determining each sheep's value because the state failed to prove that it suffered *any* economic damages as a result of defendants' crimes. That is because, according to defendants, the state neither replaced the two sheep that were killed nor proffered any other evidence that it suffered an actual loss when that happened.

To the extent that defendants' theory is simply that a victim of theft does not suffer "economic losses" unless the victim replaces the stolen property, we disagree. In the civil context, a plaintiff whose property has been converted may recover damages based on reasonable market value—in some cases, a replacement cost—even when that cost is not *verified* (as would happen if the plaintiff had actually replaced the converted property) but is merely *verifiable* (as

when the plaintiff proffers evidence of what it would cost to replace the property, even though that has not happened). *See State v. Yocum*, 247 Or App 507, 513, 269 P3d 113 (2011), *rev den*, 352 Or 25 (2012) (rejecting argument that evidence of what it would cost to replace stolen diamond earrings was not sufficient to establish that the victim suffered economic damages; noting that "the key is the extent to which damages are *capable* of verification by objective facts, not the extent to which they are verified at trial" (internal quotation marks omitted; emphasis in original)). Thus, when the plaintiff has proved a conversion claim, the plaintiff may recover damages based on the converted property's market value even when the plaintiff has not replaced that property. *Cf. Islam*, 359 Or at 803 (rejecting argument that "conversion damages depend solely on the amount that the victim 'lost,' as measured by victim's out-of-pocket replacement cost for items stolen" and observing that a victim "need not necessarily demonstrate an out-of-pocket loss" to show that the person has "'economic damages' as that term is defined in ORS 31.710(2)(a)"). Similarly, restitution may be available to the victim of theft in a criminal case, even though the victim has not replaced the stolen property.

Defendants also make a more nuanced argument, which they amplified during oral argument to this court, positing a hypothetical example involving a stolen bicycle. According to defendants, a person whose bicycle is stolen does not suffer "economic damages" if the person never intended to use the bicycle again and left it in a place where it might be taken, even though the person did not disclaim an interest in the bike. As we understand defendants' argument, it reduces to this: Because the state has the burden of proving that a crime victim has suffered "economic damages," in a case involving stolen or destroyed property, the state must prove not only that the property had *objective* economic value, but that the victim *subjectively* attached economic value to that property—otherwise, the victim was not "damaged" when the property was lost or destroyed. In that situation, defendants contend, the victim did not suffer "losses," as the definition of "economic damages" requires. *See* ORS 31.710(2)(a) ("'Economic damages' means objectively verifiable monetary losses ***.").

Applying that theory here, defendants contend that the state did not establish that it suffered "monetary losses" when the sheep died, given that it did not replace the two sheep in the I-84 herd and did not establish an intention to do so and given that it did not lose any hunting-tag or other revenue when the sheep were killed. Therefore, defendants conclude, the state did not prove that it suffered "economic damages."

As intriguing as the question framed by defendants' stolen-bicycle hypothetical might be, we need not resolve in this case whether a victim of theft has suffered economic damages when the victim did not personally attribute any value to the property that was stolen, even though the property objectively had monetary value. The record in this case supports a finding that the state *did* attach value to the two bighorn sheep, a value that was capable of objective verification and, therefore, represented a "monetary loss" to the state. *Cf.* ORS 498.002(1) ("Wildlife is the property of the state."). The record includes evidence from which the fact-finder could infer what it would have cost ODFW to replace the two sheep lost from the I-84 herd, had it chosen to do so.[3] The record also includes evidence of the value of the I-84 herd to the state's efforts to maintain the health, population, and genetic diversity of bighorn sheep in Oregon—sheep in which the state has a property interest and which the state holds in trust for the people of Oregon. *See State v. Dickerson*, 356 Or 822, 834-35, 345 P3d 447 (2015) (discussing state's interest in wildlife). Together with evidence that the state expends significant funds in association with those efforts, the record is sufficient to support a finding both that the sheep have objectively verifiable monetary value and that the state—as represented by ODFW—places *subjective* value on the sheep, given its ongoing work to protect and support them. Thus, even assuming, without deciding, that defendant is correct that a crime victim whose property is stolen or destroyed suffers economic damages only

---

[3] Although the state's evidence related to the cost of moving sheep *from* the I-84 herd elsewhere, the court used that as a basis for calculating the amount it would cost to relocate sheep *to* that herd, if ODFW chose to do that. As noted, defendants do not challenge the trial court's calculation of value; they challenge only the court's determination that the state proved that it suffered economic damages at all.

if the victim *subjectively* attached economic value to that property, the record here is sufficient to meet that posited requirement.

In sum, the record adequately supports the trial court's determination that defendants' crimes caused the state to suffer economic damages. Defendants have not established that the trial court erred when it ordered them to pay restitution.

Affirmed.