Argued and submitted March 10; reversed and remanded for resentencing
to reduce restitution by the amount of $9,273.26, otherwise affirmed
December 30, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERESA KAY EMERINE,
*Defendant-Appellant.*

Linn County Circuit Court
14CR24038; A168509

480 P3d 308

Defendant appeals from a supplemental judgment imposing $24,600.08 in restitution as a result of her convictions for aggravated first-degree theft, ORS 164.057, second-degree theft, ORS 164.045, and second-degree forgery, ORS 165.007. She argues that, because the evidence in the record is insufficient to establish a causal relationship between her criminal activities and the victim company's tax payments or penalties, the trial court erred in imposing $9,273.26 of the restitution amount under ORS 137.106. *Held*: The trial court erred as a matter of law in imposing the $9,273.26 portion of the restitution award related to the victim company's tax expenditures. On this record, it was too speculative to infer that defendant's criminal actions caused the victim company's tax expenses.

Reversed and remanded for resentencing to reduce restitution by the amount of $9,273.26; otherwise affirmed.

Thomas McHill, Judge.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Reversed and remanded for resentencing to reduce restitution by the amount of $9,273.26; otherwise affirmed.

**DeVORE, P. J.,**

Defendant was convicted upon her guilty plea to aggravated first-degree theft, ORS 164.057, second-degree theft, ORS 164.045, and second-degree forgery, ORS 165.007. She appeals from a supplemental judgment that ordered her to pay restitution to the victim company.[1] On appeal, defendant raises four assignments of error. We reject her second, third, and fourth assignments without written discussion. We address only defendant's first assignment. As to that assignment, defendant argues that, because the evidence in the record is insufficient to establish a causal relationship between her criminal activity and the victim company's tax payments or penalties, the trial court erred in imposing $9,273.26 of the restitution amount. We agree. We reverse and remand the supplemental judgment with respect to the restitution sum related to the company's taxes. Otherwise, we affirm.

We review the evidence supporting the trial court's restitution order in the light most favorable to the state. *State v. Akerman*, 278 Or App 486, 487, 380 P3d 309 (2016). In July 2013, Severson, the owner of the victim company, Northwest Mechanical, discovered that defendant had been misusing company funds. Northwest Mechanical is a small, commercial industrial refrigeration and HVAC contracting business, and it had about seven employees at the time of defendant's employment. Defendant started working as the company's full-time office manager around 2010. As such, defendant was responsible for managing Northwest Mechanical's payroll, dispatching technicians to job sites, managing the company's financial records, and ensuring that the company paid its taxes. Defendant was the primary person who handled the company's financial management software.

Throughout her employment, defendant repeatedly showed up late and missed days of work without notice. In

---

[1] This is defendant's second appeal of this matter. In the previous appeal, we granted a joint motion from defendant and the state to remand for reconsideration and resentencing. At the resentencing hearing, the trial court amended the original sentencing order by reclassifying a compensatory fine as a restitution award.

July 2013, while the company was preparing for a competitive bidding process, Severson could not reach defendant for a period of two weeks. When defendant showed up to the bid submission meeting, Severson realized that defendant was unprepared and had not been doing her job. Around the same time, defendant had informed Severson that the company could no longer afford to pay for its employees' health insurance. When defendant refused Severson's requests to see the current financial records of the company, he became suspicious. After Severson "hacked into the computer," he realized that defendant had been misusing company funds, and he discharged defendant.

Severson hired a business services company to evaluate Northwest Mechanical's finances, identify the damage caused by defendant, and reconcile the company's financial obligations. During the process, Severson discovered that defendant had been misappropriating the company's money in various ways. Defendant forged checks written to herself and signed Severson's name. Defendant wrote "draw" checks to herself, ostensibly serving as payday loans against her future paychecks, but never repaid the company. Defendant also wrote "draw" checks disguised as payments to vendors. Defendant purchased a cellphone and paid the bill using a company credit card, although she knew that the company did not provide any employee with a company phone. In addition, Severson believed that defendant had used the company credit card to make various personal purchases at grocery stores and gas stations and had used the card without permission to purchase a mattress and NFL tickets. While managing payroll, defendant paid herself for unauthorized overtime hours—hours that Severson disputed that she had worked.

Severson also discovered that defendant had neglected many of her employment responsibilities. Defendant had failed to file the necessary paperwork to renew the company's workers' compensation policy and had failed to pay the company's tax liabilities to the Oregon Department of Revenue (ODR) and the Internal Revenue Service (IRS).

Defendant was charged with three counts of aggravated first-degree theft, ORS 164.057, four counts of first-degree theft, ORS 164.055, second-degree forgery, ORS

165.007, and first-degree forgery, ORS 165.013. Defendant pleaded guilty to, and was convicted of, three charges: one count of aggravated first-degree theft, ORS 164.057, one count of second-degree theft as a lesser-included charge, ORS 164.045, and second-degree forgery, ORS 165.007.

At the first of what would be two restitution hearings with an intervening appeal, the state sought a restitution award to the company in the amount of $99,442.65. As relevant to defendant's appeal, Severson testified that, at the time of defendant's employment, the company was more vulnerable financially and less financially stable than the company was after her employment. Severson testified that, after defendant informed him that the company could no longer pay for employees' health insurance, he cancelled his own health insurance and sold assets to maintain the employees' insurance. As to the tax payments sought as restitution, Severson testified that the amount was entirely attributable to penalties accrued as a result of defendant's failure to timely file the company's taxes.

At the initial hearing, defendant conceded as to certain restitution amounts based on specific instances of misconduct, but she disputed that the state had met its evidentiary burden as to the majority of the restitution sought. Defendant conceded as to the cellphone expenses and some credit card charges; she also conceded that she should pay the $6,000 increased workers' compensation costs because it was her "error that caused that to be cancelled." Beyond that, defendant argued that the evidence was not sufficient to support all of the remaining restitution sought by the state, including a majority of the credit card transactions and forged checks. As to the tax payments, defendant disputed that the total amount sought, $9,273.26, was entirely penalties that resulted from defendant's conduct. She argued that the amount was largely independently owed taxes. Defendant also argued that she was entitled to payment for the reported overtime amounts, even if the overtime was unauthorized.

At the conclusion of the initial hearing, the trial court ordered defendant to pay a compensatory fine. The court began with the amount of $41,448.84 but reduced

it by the $16,848.76 insurance payment that the company received, resulting in a fine amount of $24,600.08. The compensatory fine, in relevant part, included $9,273.26 for tax penalties the company incurred as "a result of defendant's conduct in this case" in failing to pay the company's taxes, as well as the $6,000 that defendant conceded she owed the company for its new workers' compensation policy.

In the earlier appeal of this case, we granted a joint motion by defendant and the state to remand for reconsideration and resentencing under the rationale of *State v. Kellison*, 289 Or App 55, 57, 407 P3d 978 (2017), *rev den*, 362 Or 665 (2018) (holding that it is error to impose a compensatory fine that exceeds the punitive fine and that a compensatory fine must be a subset of a punitive fine).

Upon remand, defendant argued that the $9,273.26 portion of the original compensatory fine attributable to the company's tax penalties was improper as a restitution award under ORS 137.106 because the tax penalties were not incurred as a result of defendant's criminal activity. Defendant argued that any tax penalties incurred were only the result of her noncriminal, albeit negligent, performance of her employment responsibilities. The trial court declined to reconsider the underlying amount of the award and amended the original sentencing order to impose the $24,600.08 as a restitution award rather than a compensatory fine.[2]

On appeal, defendant renews her argument that the resentencing court erred in imposing the portion of the restitution award attributable to the company's tax payments. She argues that, because the evidence in the record is insufficient to establish a causal relationship between her convictions and the tax payments, a restitution award for that expense is not allowed under ORS 137.106.[3] The state

---

[2] Upon remand, the state indicated that the court had already held a hearing on restitution and made fact findings necessary for resentencing. No one objected to the statement. The record indicates that the court proceeded based on the facts adduced at the original restitution hearing.

[3] In her third assignment of error, defendant raises a similar causation argument regarding the $6,000 portion of the restitution order attributable to the victim company's increased workers' compensation costs. Defendant failed to preserve that argument, raising it for the first time in this appeal, and, as a consequence, we do not address the issue here. *See State v. Wyatt*, 331 Or 335, 343, 15

responds that the tax payments are attributable to the theft and forgery charges of which defendant was convicted. The state argues that the court may infer that the amount of money attributable to defendant's theft negatively impacted the victim company's finances to the extent that the company was unable to meet its financial obligations, including tax payments. The state concludes that, because the company was unable to make its tax payments on time, the company incurred the $9,273.26 penalty.

A trial court is authorized by ORS 137.106 to order restitution when a person is convicted of a crime that has resulted in economic damages.[4] Under that statute, the state must provide sufficient evidence of (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two. *State v. Kirkland*, 268 Or App 420, 424, 342 P3d 163 (2015). The record must support a nonspeculative inference that there is a causal relationship between the defendant's criminal activities and the victim's economic damages. *Akerman*, 278 Or App at 490. The requirement of a causal relationship means that the defendant's criminal activities must be a "but for" cause of the victim's damages and that the damages must have been a reasonably foreseeable result of the defendant's criminal activities. *State*

---

P3d 22 (2000) (explaining that an error is unpreserved if defendant's argument is too general to alert the trial court to the specific error being challenged).

Given defendant's concession at the hearing that she owed the $6,000 due to her conduct, any error is not plain. *But see State v. Martinez*, 250 Or App 342, 344, 280 P3d 399 (2012) (concluding that an error is plain where the record is devoid of any evidence from which the court could find that defendant's criminal conduct resulted in the contested damages). Even if the error were plain, these are not circumstances that would call for the exercise of discretion to correct the error. *See State v. Inman*, 275 Or App 920, 935, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) (explaining that the ease with which any error could have been avoided or corrected should be a significant factor in an appellate court's decision whether to exercise its discretion to correct plain, but unpreserved, error).

[4] In relevant part, ORS 137.106 states:

"(1)(a) When a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. *** If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

*v. Parsons*, 287 Or App 351, 357, 403 P3d 497, *adh'd to as modified on recons*, 288 Or App 449, 403 P3d 834 (2017), *rev den*, 362 Or 545 (2018). "Criminal activities" are defined as "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1). "[W]hether those prerequisites have been met is ultimately a legal question that will depend on the trial court's factual findings." *Akerman*, 278 Or App at 490 (internal quotation marks omitted).

In this case, those standards require that defendant's criminal activities be causally related to the victim company's tax expenditures.[5] Defendant was convicted of aggravated first-degree theft, ORS 164.057, second-degree theft, ORS 164.045, and second-degree forgery, ORS 165.007. Defendant does not deny that it was her responsibility as office manager to file the proper paperwork with the ODR and IRS. By admitting that she failed to file the company's taxes on time, defendant concedes that she neglected her employment duties. That admission of ordinary neglect, however, does not resolve the issue of restitution for criminal offenses. The issue we must decide is whether there is evidence in the record to support a determination that the company's accrual of tax penalties can be deemed the "but for" result of defendant's theft and forgery, rather than the result of the negligent performance of her employment responsibilities.

The state relies on an inference from Severson's testimony that the company was left in such dire financial condition from defendant's theft that it could not pay its taxes and thus incurred the tax penalties. On this record, however, such an inference is questionable. Defendant admitted that she committed theft and forgery between 2010 and 2013. The company did not pay its tax bills for multiple quarters in 2013. The only evidence regarding the company's overall financial condition at the time of defendant's employment is

_____

[5] Because we reverse as to the tax "penalty" amount on the issue of causation, we do not need to address the seeming difference between the owner's testimony that the entire $9,273.26 tax expenditure was for state and federal tax penalties (rather than some portion of underlying tax liability) and the IRS 90-day letter in Exhibit I indicating underlying federal taxes of $7,558.06 with the interest because of late payment at $13.05.

Severson's testimony on two points—one very general and one indirect. He testified (1) that his company was "more vulnerable financially" at the time of defendant's employment than the company was at the time of the hearing and (2) that, upon learning that the company could not afford health insurance for its employees, Severson cancelled his own health insurance and sold assets to cover the cost for employee health insurance. Severson did not describe the company's financial constraints with any particularity, and he did not describe any choice among priorities as to which bills were paid first and which could not be paid.

Our precedents illustrate when a defendant's criminal activity may be linked to damages by a nonspeculative inference. For example, we have determined that there was a link between a defendant's criminal activity that involved leaving a stolen car unprotected in a front yard to the later damage done to that car by way of a permissible inference that leaving the car unattended facilitated that damage. *State v. Stephens*, 183 Or App 392, 397, 52 P3d 1086 (2002). A defendant breaking a door during a burglary was also linked to goods allegedly stolen during a subsequent burglary by a permissible, nonspeculative inference that breaking the door created free access to the house for later thieves. *State v. Doty*, 60 Or App 297, 300, 653 P2d 276 (1982). Both of those cases involved damages that were tied to a specific criminal activity of the defendant, such as the careless abandonment of a car during the unauthorized use of a vehicle or the breaking of a door during a burglary.

We have found it too speculative to infer a connection between a defendant's criminal activity and proposed damages where the link to a defendant's criminal activity is merely the general occurrence of similar facts and events surrounding separate damages or crimes. For example, where a defendant admitted to intentionally damaging some pairs of pants, it was too speculative to infer that the defendant stole two other pairs of pants merely because they went missing under similar "facts and events" as the admitted criminal conduct. *Parsons*, 287 Or App at 357-59. Similarly, in *Ackerman*, 278 Or App at 491-92, it was too speculative to infer that, because a defendant was found guilty of one instance of theft, a defendant was responsible

for all thefts at the same property over the previous two years. Likewise, a defendant's conviction for receipt of a stolen jewelry armoire, without more, did not support a nonspeculative inference that the defendant also initially stole the armoire or the jewelry it contained. *State v. Ivory*, 231 Or App 381, 386, 220 P3d 56 (2009).

The state's argument resembles the latter cases where we concluded that the causal inferences were too speculative. Those cases demonstrate that the coincidence of a general circumstance—such as a company's financial instability over a long period of time—and the defendant's criminal activity is not enough to establish a causal connection with particular damages. Here, Severson's statements are only anecdotal and generalized statements that left the court to speculate about the specifics of any connection between defendant's theft and the company's taxes. His statements do not, without more, support a reasonable inference that the financial impact of defendant's theft and forgery was so severe that the company could not have arranged to pay its federal taxes as it had arranged to pay employee health insurance. There is no evidence permitting a reasonable inference that the company did not pay its tax bill because it lacked the necessary funds due to defendant's forgeries or thefts. When the requisite causal relationship between defendant's offenses and the victim's expenses is so speculative, causation cannot be found to exist. Restitution for such speculative damages cannot be imposed under ORS 137.106.

We conclude that the trial court erred as a matter of law in imposing the $9,273.26 portion of the restitution award related to the company's tax expenditures. Accordingly, we reverse and remand for resentencing to eliminate that portion of the supplemental judgment on restitution. Otherwise, we affirm.

Reversed and remanded for resentencing to reduce restitution by the amount of $9,273.26; otherwise affirmed.