264                    January 2, 2025                    No. 9

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN MCKENZIE MATTILA,
aka John McKenzie Matilla, aka John McKenzie,
*Defendant-Appellant.*

Umatilla County Circuit Court
19CR13223; A177730

Christopher R. Brauer, Judge.

Submitted January 19, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Portion of judgment awarding restitution to SAIF Corporation for lost wages reversed; otherwise affirmed.

## MOONEY, S. J.

Defendant appeals a judgment convicting him of various crimes including second-degree manslaughter, ORS 163.125, and failure to perform the duties of driver to injured persons, ORS 811.705(2)(b).[1] On appeal, defendant's sole challenge is to the trial court's award of restitution to the State Accident Insurance Fund Corporation (SAIF) for payments that SAIF made to the victim's surviving spouse under ORS 656.204(2)(a) as a result of the victim's death. Essentially, defendant contends that the trial court may not include a restitution award in favor of SAIF for payment of the death benefit prescribed by ORS 656.204(2)(a), as a matter of law, because it does not encompass payments for economic damages within the scope of ORS 137.103(2). We conclude that the evidence does not support the challenged portion of the restitution award as economic damages because there was no testimony that the payments were made to replace the victim's wages and there was no testimony about the amount of those wages. We, thus, reverse the portion of the judgment that awards restitution to SAIF for lost wages, and otherwise affirm.

"We review the trial court's imposition of restitution for legal error, remaining mindful that we are bound by the trial court's findings if they are supported by any evidence in the record." *State v. Page*, 330 Or App 672, 674, 544 P3d 421 (2024) (citing *State v. Lobue*, 304 Or App 13, 16, 466 P3d 83, *rev den*, 367 Or 257 (2020)). "We review the evidence supporting the trial court's restitution order in the light most favorable to the state." *State v. Emerine*, 308 Or App 211, 212, 480 P3d 308 (2020).

The pertinent facts are not in dispute. Defendant was intoxicated when he caused a collision that resulted in A's immediate death. Defendant did not stop or remain at the scene of the collision. He did not attempt to render aid, and he did not call for emergency services. When law enforcement agents attempted to arrest defendant, he

---

[1] Defendant was also convicted of driving under the influence of intoxicants, ORS 813.010(4), third-degree escape, ORS 162.145, and interfering with a peace/parole and probation officer, ORS 162.247. Those counts were discharged at the time of sentencing. The first-degree manslaughter charge was dismissed without conviction.

tried to escape. A's death was work-related because she was on-the-job at the time of the fatal collision. SAIF was, thus, legally obligated to pay certain death benefits to A's surviving spouse. SAIF, in fact, paid A's husband $19,108.96 for funeral and burial expenses and $56,221.36 for lost wages between the time of A's death and the restitution hearing, totaling $75,330.32.

The state did not offer evidence of A's actual lost wages in support of its request for restitution. It instead offered the testimony of a SAIF employee who explained that A's surviving spouse was paid a monthly amount for "fatal benefits" calculated in accordance with ORS 656.204, which provides:

> "If death results from an accidental injury, payments must be made as follows:
>
> "* * * * *
>
> "(2)(a)  If a worker is survived by a spouse, monthly benefits must be paid in an amount equal to 4.35 times 66-2/3 percent of the average weekly wage to the surviving spouse until remarriage. Only one person may qualify as a spouse for the purposes of this paragraph. The payment shall cease at the end of the month in which the remarriage occurs."

The term "average weekly wage" is defined in ORS 656.211 to mean:

> "the average weekly wage of workers in covered employment in Oregon, as determined by the Employment Department, for the last quarter of the calendar year preceding the fiscal year in which compensation is paid and as computed by the Employment Department as of May 15 of each year."

In defendant's view, the benefit required by ORS 656.204 (2)(a) is not properly includable as restitution because it does not, in fact, represent payments made for economic damages within the scope of ORS 137.103(2). Defendant characterizes the payments as "insurance benefits from a worker's compensation claim * * * not materially different than benefits paid from a claim made by the family on a life insurance" policy, and he points to the absence of evidence that the

payments to A's widower actually replaced A's lost wages or earning capacity.

As an initial matter, SAIF, as an insurance carrier, is entitled to restitution under the statutes because it "expended moneys on behalf of" A's estate which, itself, is entitled to recover economic damages from defendant. ORS 137.103(4)(a), (d), (e). Those economic damages include "loss of income," ORS 31.705(2)(a), but they do not include future impairment of earning capacity. ORS 137.103(2)(a). To the extent that defendant argues that the restitution statutes do not authorize an award to an insurer for amounts expended to cover wage loss, we reject that argument. *See, e.g.*, *State v. Romero-Navarro*, 224 Or App 25, 30, 197 P3d 30 (2008), *rev den*, 348 Or 13 (2010) (holding that the insurer was entitled to restitution for burial and memorial expenses paid on behalf of a homicide victim's estate).

Having concluded that SAIF is eligible to recover restitution for amounts expended for economic damages that would be recoverable by A's estate, we turn to whether the state proved that the "fatal benefits" payments made by SAIF are recoverable under ORS 137.106 as "loss of income" damages to A's surviving spouse. The state must establish restitution by proof of three elements: (1) criminal activity, (2) economic damages, and (3) a causal relationship between the criminal activity and the economic damages. *State v. Kirkland*, 268 Or App 420, 424-25, 342 P3d 163 (2015). The state bears the burden of proof on restitution, including the overall reasonableness of the award. ORS 137.106(1)(a); *State v. Aguirre-Rodriguez*, 367 Or 614, 620-22, 482 P3d 62 (2021).

It is undisputed that A died as a result of defendant's criminal conduct. The narrow question before us concerns the second element: did the state prove that the payments made by SAIF pursuant to ORS 656.204(2)(a) qualify as economic damages? The term "economic damages" as used in the context of restitution is defined by ORS 137.103(2) which incorporates most of the definition given to that term by *former* ORS 31.710(2)(a)[2] for civil matters.

---

[2] In 2021, the legislature amended ORS 31.710(2)(a) and renumbered it ORS 31.705(2)(a). Or Laws 2021, ch 478, §§ 1, 3. The changes took effect in 2022 and do not affect this appeal.

As we have explained, economic damages are the objectively verifiable monetary losses that would be recoverable against the defendant in a civil action arising out of the defendant's criminal activities. *State v. Herfurth*, 283 Or App 149, 153-54, 388 P3d 1104 (2016), *rev den*, 361 Or 350 (2017).

As we understand his argument, defendant contends that the evidence is insufficient to show that SAIF's benefit constituted payments for "lost income" for purposes of ORS 137.106 because the state did not introduce sufficient evidence that the benefit replaced A's wages or past earning capacity. Defendant relies on *State v. Martinez*, 250 Or App 342, 280 P3d 399 (2012), where we accepted the state's concession that the trial court plainly erred in awarding $273 in restitution to Care Oregon. *Id.* at 343. We note, however, that in that case—other than the notation "Attn: Subrogation" on the supporting exhibit proffered by the prosecutor—the record lacked evidence to support that Care Oregon was, in fact, an insurance company that made payments for treatment rendered to one of the victims. *Id.* This case is a bit different. We do not understand defendant to dispute that his criminal conduct caused A's death, that A was survived by her husband, that SAIF is an insurance carrier, or that SAIF was required to—and did—make payments to her widower under ORS 656.204(2)(a). The question here is narrower than was the question in *Martinez*. Was the testimony that SAIF paid "fatal benefits" to A's widower under ORS 656.204(2)(a), using the standard calculation of that statutory provision, sufficient to establish that those payments were made to replace A's income?

The benefit provided to A's surviving spouse under ORS 656.204(2)(a) is paid monthly until such time as he dies or remarries, and it is calculated in the amount of the average weekly wage of Oregon workers covered by the workers compensation system. The legislature's use of a standardized approach to calculate such benefits following work-related deaths is not connected to the actual wage loss of any particular worker, and the testimony in this case did not address the actual wages lost due to A's death. At most, there is evidence that something called "fatal benefits," calculated according to the statutory formula without regard to A's actual wage loss, were paid to A's widower.

The state argues, without any authority, that "it should be obvious that the death benefit that is prescribed by ORS 656.204(2)(a) is both in the nature of and is intended to be a partial replacement for the decedent's lost wages[.]" Even if that were so, no evidence was offered about A's lost wages. Although SAIF's use of a statutory formula to calculate the "fatal benefits" required by ORS 656.204(2)(a) might be viewed as presumptively reasonable,[3] the lack of testimony connecting that "fatal benefit" to A's lost wages left the trial court to speculate about that part of the state's restitution request. The trial court erred when it imposed restitution for SAIF's payment of the monthly "fatal benefits" to A's surviving spouse without any evidence tethering those payments to recoverable lost wages within the meaning of the restitution statutes.

Portion of judgment awarding restitution to SAIF Corporation for lost wages reversed; otherwise affirmed.

---

[3] *See State v. Roskelley*, 336 Or App 360, 368 n 2, ___ P3d ___ (2024) (noting that "the legislature deems the rate paid under Oregon's medical service fee schedule for workers' compensation injuries to be presumptively reasonable in personal injury protection claims[]" and suggesting "by analogy, [that] the payment of post-[settlement] bills by SAIF at the rate established for workers' compensation claims would be presumptively reasonable"). Of course, there was evidence of medical bills actually paid in *Roskelley*.