No. 53 January 31, 2024 443

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEX FERDENCIO CARACHURI,
*Defendant-Appellant.*

Washington County Circuit Court
21CR22896; A177103

Ricardo J. Menchaca, Judge.

Argued and submitted June 5, 2023.

David L. Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. On the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mark J. Kimbrell, Deputy Public Defender, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Remanded for resentencing; otherwise affirmed.

**MOONEY, J.**

Defendant drove recklessly as he argued with his girlfriend. He ultimately lost control of the car and crashed into a guardrail. After pleading guilty to several crimes, including coercion, recklessly endangering another person, menacing, and third-degree assault, defendant was sentenced to probation with various conditions. He soon violated his probation, and a joint hearing was held on that violation and the state's request for restitution. Defendant was ordered to pay restitution to Washington County for the costs the county incurred in repairing the damaged guardrail, and additional conditions of probation were imposed. Defendant appeals from the supplemental judgment, assigning error to the trial court's imposition of (1) $6,145.32 in restitution for the county's labor costs associated with repairing the guardrail and (2) probation conditions not announced on the record.

The state appropriately concedes the second assignment of error, and we accept that concession. *See State v. Bonner*, 307 Or 598, 600, 771 P2d 272 (1989) ("Judgment in a criminal case must be pronounced in open court."); *State v. Keen*, 304 Or App 89, 90, 466 P3d 95 (2020) ("[T]he [probation] condition was not properly imposed because it was not announced in open court."). The error regarding the probation conditions entitles defendant to resentencing, and we remand for that purpose. *See State v. Anotta*, 302 Or App 176, 178, 460 P3d 543, *rev den*, 366 Or 552 (2020) (concluding that the appropriate remedy when a trial court improperly imposes conditions of probation in a judgment that were not announced at sentencing is to remand for resentencing). For the reasons that follow, we affirm on the first assignment.

We review the trial court's imposition of restitution for legal error. *State v. Lobue*, 304 Or App 13, 16, 466 P3d 83, *rev den*, 367 Or 257 (2020). We are bound by the trial court's findings, including reasonable inferences, when supported by any evidence in the record, *id.*, and we review the evidence in the light most favorable to the state. *State v. Smith*, 291 Or App 785, 788, 420 P3d 644 (2018).

ORS 137.106 (2021)[1] requires a trial court to order restitution "[w]hen, a person is convicted of a crime *** that has resulted in economic damages[.]" There are three prerequisites for the imposition of restitution as part of a defendant's criminal sentence: "(1) criminal activities, (2) economic damages, and (3) a causal relationship between" the criminal activity and the economic damages. *State v. Kirkland*, 268 Or App 420, 424, 342 P3d 163 (2015) (internal brackets omitted). The state bears the burden of proving the factual prerequisites necessary to support an award of restitution. ORS 137.106(1)(a); *State v. Aguirre-Rodriguez*, 367 Or 614, 620, 482 P3d 62 (2021).

Restitution is imposed as a criminal sanction and "must be understood as an aspect of criminal law," *State v. Dillon*, 292 Or 172, 180, 637 P2d 602 (1981), and yet restitution is also "informed by principles enunciated in civil cases concerning recoverable economic damages." *State v. Islam*, 359 Or 796, 800, 377 P3d 533 (2016). We have emphasized the penal purposes of restitution in some of our opinions and the compensatory purposes in others. *See*, *e.g.*, *State v. Tejeda-Serrano*, 328 Or App 656, 658, 538 P3d 1239 (2023) (noting that a key purpose of criminal restitution is to make a victim whole); *State v. Boyar*, 328 Or App 678, 679, 538 P3d 1225, *rev den*, 371 Or 771 (2023) (explaining that restitution is intended to be penal, not compensatory).

In fact, restitution awards mandated by ORS 137.106 serve both criminal and civil purposes. The statute is itself a criminal statute that mandates restitution under certain circumstances as part of a criminal sentence. As the Supreme Court explained, that statute contains a "cross-reference to the definition of 'economic damages' applicable in civil actions." *State v. Ramos*, 358 Or 581, 594, 368 P3d 446 (2016). That reference, along with "the legislature's purpose in creating the restitution procedure as a substitute for a civil proceeding, make[s] civil law concepts relevant to our interpretation of ORS 137.106." *Id.* The overlapping criminal and civil purposes were again noted by the court in *Islam* when it explained that "[t]he purpose of damages

---

[1] ORS 137.106 was amended in 2022. *Or Laws* 2022, ch 57, § 1. Those amendments are now in effect, but they are not relevant to this case. We refer to ORS 137.106 as it existed in 2021.

and criminal restitution is to make a victim whole[.]" *Islam*, 359 Or at 802. Criminal restitution may be awarded for economic damages only and, therefore, cannot be viewed as a complete substitute for civil recovery proceedings in all instances. The criminal restitution statutes do not prohibit a party injured by a defendant's criminal conduct from filing a civil action against the defendant to recover damages. ORS 137.109. It is, thus, a combination of damages recoverable through civil proceedings and through criminal restitution that may potentially make the victim whole.

ORS 137.103(2) defines "economic damages" by incorporating most of the definition given to that term by ORS 31.705(2)(a) for civil matters. As explained in *State v. Herfurth*, 283 Or App 149, 153-54, 388 P3d 1104 (2016), *rev den*, 361 Or 350 (2017), they are "objectively verifiable monetary losses" recoverable "against the defendant in a civil action arising out of the defendant's criminal activities." Restitution is to be imposed when "a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred," and such losses resulted from the defendant's criminal conduct. *Ramos*, 358 Or at 597.

Defendant does not dispute the amount of restitution imposed for the cost of materials and equipment needed to repair the guardrail; he objects only to Washington County's labor costs. He argues that the required causal link between his criminal conduct and the county's labor costs is missing because there was no evidence that the county would not have incurred those costs absent defendant's criminal conduct. He argues, in other words, that the county did not establish that a recoverable economic loss occurred when it paid its employees to repair the guardrail because it would have paid them the same wages for their work even if the guardrail had not been damaged.

Defendant relies on *State v. Wilson*, 193 Or App 506, 92 P3d 729 (2004), where we reversed a restitution award imposed for the labor expenses of the Department of Corrections' (DOC) Fugitive Apprehension Unit in apprehending the defendant after he escaped from custody while

serving a prison sentence. Defendant reads *Wilson* too broadly. We reasoned that the labor costs in *Wilson* could not have been recovered under ORS 161.665(1) because they would have been incurred "irrespective of specific violations of law," making them "no more recoverable as restitution than they are recoverable as costs." *Id.* at 510-11. The labor costs, we concluded, "[were] not recoverable under any theory of civil liability[.]" *Id.* at 511. We have applied that holding only to cases involving similar costs associated with criminal investigations or prosecutions. *See*, *e.g.*, *Herfurth*, 283 Or App at 159 (concluding that a CARES interview, conducted as part of a criminal investigation, did not give rise to an award of restitution for associated costs); *State v. Mann*, 329 Or App 279, 540 P3d 582 (2023) (concluding the same where a CARES assessment was described as a "proxy" for a police interview). *Wilson* does not apply here because the cost to repair the guardrail was not incurred irrespective of specific violations of the law. The cost of repairing the guardrail was incurred because of defendant's criminal activity and would be recoverable in a civil proceeding for damages arising out of defendant's criminal conduct.

Defendant also relies on *State v. Heath*, 75 Or App 425, 706 P2d 598 (1985), a case in which the defendants pleaded no contest to charges of disorderly conduct arising from their participation in a protest against certain logging operations. We reversed the restitution award for the labor costs associated with supervisor time spent "dealing with the protest," noting that the victim "would have had to pay its supervisors the same average hourly rate whether they had dealt with the protest or not." *Id.* at 427-28. We reasoned that the victim "experienced the inconvenience of not having its supervisors available for other work while dealing with the protest," but that "the inconvenience d[id] not amount to pecuniary damage." *Id.* at 428. We reversed the restitution award because it was imposed for the cost of labor used to monitor the protest, and not the "actual expense incurred as a result of defendants' protest actions[.]" *Id.* This case is different than *Heath*. The evidence here was that defendant damaged the guardrail when he lost control of his car and crashed. The damage to the guardrail was, thus, caused by defendant's criminal conduct and the damaged guardrail

needed to be repaired. In *Heath*, the defendant's actions did not create work for the victim that did not exist before the protest. The causal link that was missing in *Heath* is present here.

This case is more like *State v. Marquez*, 139 Or App 379, 912 P2d 390, *rev den*, 323 Or 483 (1996), a case in which we affirmed an award of restitution for the labor costs of salaried employees who "had to work on the problems created by defendant's criminal activity." *Id.* at 384. In that case, the defendant had illegally accessed the Umatilla County computer system and caused damage to it. That defendant argued that, under *State v. Heath*, he could not be ordered to pay restitution because the county would have incurred its labor costs regardless of his criminal conduct. We disagreed because the county's loss "resulted from 'correcting' the problem caused by" the defendant. *Marquez*, 139 Or App at 382. The county would not have dedicated its staff and other resources to correct a problem that did not exist. As we explained, "[b]ut for [the] defendant's criminal activity, those resources would not have been diverted to" fix the problem. *Id.* at 384.

Defendant engaged in criminal conduct that caused damage to the county's guardrail, and the county incurred costs to repair that damage. The trial court did not err in including the cost of the labor that it took to repair the guardrail in the economic damages imposed as restitution.

Remanded for resentencing; otherwise affirmed.