242 December 31, 2025 No. 1145

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRENA LEE SHEPHERD,
*Defendant-Appellant.*

Linn County Circuit Court
21CR08338; A179944

Michael B. Wynhausen, Judge.

Argued and submitted October 15, 2024.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.*

O'CONNOR, J.

Supplemental judgment vacated and remanded; otherwise affirmed.

_____

 * O'Connor, Judge *vice* Mooney, Senior Judge.

**O'CONNOR, J.**

Defendant pleaded no contest to two counts of first-degree criminal mistreatment, ORS 163.205, committed against her elderly mother, D. On appeal, defendant challenges the trial court's imposition of a restitution award to D in a supplemental restitution judgment.

Defendant raises three assignments of error. In the first assignment of error, she argues that the trial court erred when it imposed restitution after she submitted a written document from D that released D's claim against defendant for civil liability and waived D's right to receive restitution. In the alternative, defendant asserts that the trial court abused its discretion in awarding the full amount of restitution because, under *former* ORS 137.106(1)(b) (2021), *renumbered as* ORS 137.106(2)(b) (2023),[1] a trial court may award less than the full amount of economic damages as restitution if the victim consents in writing. She argues that the trial court made a "predicate legal error" when it ruled that defendant breached the plea agreement by asking the court to impose less than the full amount of restitution. In defendant's second assignment, she argues that the trial court erred in calculating the full amount of damages. Finally, in her third assignment, defendant asserts that the trial court plainly erred when it imposed $14,660 in restitution for conduct outside the scope of defendant's criminal conduct to which she pleaded no contest because the trial court had dismissed the underlying charge as part of the plea agreement.

We agree with one of defendant's arguments in her first assignment of error. The trial court made a legal error when it concluded that it lacked discretion to impose less than the full amount of economic damages as restitution because defendant's submission of D's waiver and defendant's request for no restitution violated the plea agreement. Because that legal error did not affect the trial court's

---

[1] ORS 137.106 (2021) was the version in effect during the proceedings in the trial court. The legislature amended ORS 137.106 in 2022. Or Laws 2022, ch 57, § 1. The amendment became effective on January 1, 2023, and applies to judgments entered on or after the effective date. Because the statutory text contested by the parties did not change in 2022, the citations that follow refer to ORS 137.106 (2023).

determination of D's economic damages, we reach defendant's second and third assignments of error.

On defendant's second assignment of error, we conclude that defendant failed to preserve the argument that she raises on appeal, and we thus decline to consider the merits. On her third assignment of error, we agree that the trial court plainly erred when it imposed $14,660 in restitution for conduct alleged in a case dismissed as part of the plea agreement because defendant had not been found guilty of that conduct or admitted to it on the record. But we decline to exercise our discretion to correct the error because the record supports an inference that defendant acknowledged that her conduct had caused D that amount of economic damages and asked the court not to impose the economic damages as restitution based on D's waiver. Accordingly, we vacate the supplemental restitution judgment and remand to the trial court for a new restitution hearing consistent with this opinion.

Because the trial court did not err when it found the full amount of D's economic damages, as required by ORS 137.106(2)(a), the parties on remand may proceed to the next step in the restitution statute—the effect of D's waiver and whether the trial court should exercise its discretion to award D less than the full amount of economic damages as restitution under ORS 137.106(2)(b).

## FACTS

In 2020, defendant's elderly mother, D, called the police department to ask for help contacting defendant because D did not have any food. D has short-term memory loss. The responding officer confirmed that D had very little food in the home. The officer observed that D appeared to have cognitive limitations that would prevent her from buying her own groceries.

The officer also obtained D's banking records from 2012 to 2020. Defendant and D had a joint bank account. They both deposited money into the joint account and paid expenses out of it. D contributed more money to the account than defendant. Law enforcement determined that defendant had misappropriated some of her mother's money,

leaving insufficient funds to cover D's basic needs. At times, defendant told D there was not enough money in the joint account to pay D's utilities.

The state charged defendant with two counts of first-degree criminal mistreatment, ORS 163.205; 10 counts of first-degree aggravated theft, ORS 164.057; and one count of first-degree theft, ORS 164.055, in Case No. 21CR08338. The indictment alleged that the offenses were committed on or about dates that ranged between February 17, 2015 to February 17, 2021. Defendant signed a release agreement in March 2021. A condition of her release prohibited defendant from accessing or controlling her mother's money. Later in the case but still pretrial, the state charged defendant in a new case, Case No. 21CR50912, with one count of first-degree aggravated theft, alleging that defendant spent $14,660 of her mother's money from the joint account, not for her mother's benefit, between April 2021 to September 2021. The state also alleged that the new offense violated the terms of defendant's release in Case No. 21CR08338.

At a settlement conference, defendant and the state reached a plea agreement to resolve both cases. The court and the parties went on the record at the settlement conference, and the court recited the parties' plea agreement. Defendant agreed to plead no contest to two counts of first-degree criminal mistreatment in Case No. 21CR08338. The state agreed to dismiss the remaining charges in Case No. 21CR08338 and to dismiss Case No. 21CR50912 entirely. The parties jointly agreed to recommend a sentence of 36 months of supervised probation. The parties told the court that they agreed "that restitution should be left open [for] 90 days" and that restitution "will be determined" at a hearing within the 90-day window.[2]

At a change of plea and sentencing hearing, defendant submitted a signed plea petition consistent with the

_____

[2] Neither the parties nor the trial court suggested that there was a written plea agreement. The prosecutor later referenced a written plea offer during the restitution hearing. The plea offer is not in the record, and there is no evidence that the plea offer reflected the agreement that the parties reached at the settlement conference. The parties have not suggested on appeal that there was a written plea agreement, and we have not identified a written plea agreement in our review of the record.

resolution described by the court at the settlement conference, except that the plea petition did not mention restitution. The plea petition notes that the date ranges for the two counts to which defendant pleaded no contest were February 17, 2015 through February 17, 2021. During the hearing, the prosecutor said that defendant had misappropriated "at least $157,000" and that he knew they were having a hearing "on that, but that is the state's belief." Defendant did not admit that she owed restitution during the change of plea and sentencing hearing. When the court imposed the sentence, it found "that the victim suffered a pecuniary loss in this case and that restitution should be left open for a period of 90 days."

At the restitution hearing, defendant presented a waiver and release signed by D, which purported to release defendant from any liability relating to the joint bank account and to waive D's claim for restitution. Defendant asked the court not to impose restitution under ORS 137.106(2)(b), arguing that D "doesn't want any restitution and the fact she's put it in writing and has released her claim for restitution *** determines that there is no basis to proceed for restitution." Alternatively, defendant argued that even if the court concluded that there was a basis to go forward with restitution, the damages sought in this case were not within the purview of "economic damages" for the purposes of criminal restitution because the money in question came from a joint account legally owned by both D and defendant. The state argued that the plea agreement "included the [d]efendant agreeing to pay restitution[,]" and emphasized that the court had discretion to impose restitution despite D's waiver under ORS 137.106(2)(b).

The court interjected that it had already determined that defendant's spending of money from the joint account was criminal conduct based on defendant's plea to first-degree criminal mistreatment, "which is alleged as financial abuse of the victim[.]" Defense counsel responded that it was a no contest plea. The trial court then agreed with the state that defendant's request for no restitution would violate the plea agreement, and ruled that unless defendant wanted to proceed to open sentencing, the only

issue the court would consider was the amount of restitution that the state could establish:

> "THE COURT:    Well, but she pled to the charges, she's convicted. So, that issue has been resolved. There's no question at this point that there has been financial abuse, the only issue it seems before the Court is whether or not—or what the amount of that abuse is, which needs to be established through this hearing. But I think that she's—and I don't have a copy of the plea agreement in front of me, let me see if the—

> "[PROSECUTOR]:    I can present the Court with the plea offer.

> "THE COURT:    —the plea petition.

> "So, you know, if that's the agreement of the parties, I suppose if she wants to unwind that portion about the restitution, we could just proceed with open sentencing, but I don't think you want to do that[.] * * *

> "So, I'm going—the only concern that the Court has at this point is for the State needing to establish the amount, if any, they can of restitution that's owing at this point."

The hearing proceeded and both parties presented evidence, and they contested D's expenses and how much money defendant had misappropriated. We summarize the evidence in some detail because it informs our resolution of defendant's assignments of error.

The evidence established that D and defendant lived together between 2015 and 2018 and shared a joint bank account that they both contributed to, although D had contributed more than defendant. The state presented evidence that showed D suffered from short-term memory loss. It also presented two different possible calculations for D's monthly income and expenses.

The first calculation came from the lead investigating officer and the second calculation came from an Oregon Department of Justice (DOJ) Special Agent. The special agent calculated D's expenses as much lower than the lead investigator, which resulted in a higher amount of damages because the special agent attributed more of the spending from the joint account to defendant's misconduct. Using the

special agent's numbers, the state presented the trial court with a damages calculation from 2015 to 2020 of $146,703.

The state also presented evidence that between April 2021 and September 2021, defendant took $14,660 from the joint account that she shared with D. Those allegations formed the basis of the alleged pretrial release violation in Case No. 21CR08338 and the single count of first-degree aggravated theft in the dismissed case, Case No. 21CR50912. In total, the state sought $161,363 in restitution.

The defense's evidence included testimony from both defendant and D.[3] During D's testimony, defense counsel asked about D's waiver. The state objected and asserted that the trial court had already ruled that the waiver was "not relevant" to the restitution award. The record reflects no response by the trial court to the prosecutor's statement. Defense counsel stated that he wanted "to establish for the record that [D] signed that [waiver] freely and voluntarily." The court permitted the question, and the following exchange took place:

"[DEFENSE COUNSEL:]   Do you remember signing that document?

"[D:]   Well, to tell you the truth, sir, it seems like I've signed so many things I'm not for sure exactly what they're talking about.

"Q.   Well, I just want—do you remember when I brought a document to you and you—

"A.   Oh, yeah.

"Q.   —and you signed it?

"A.   Yeah.

"Q.   Okay. Did you understand what you signed?

"A.   Basically, yeah.

"Q.   Did you do so freely and voluntarily?

"A.   Sure."

---

[3] The restitution hearing occurred on two separate days—August 18, 2022, and September 20, 2022—because the court needed an extra day for the defense witnesses. Defendant was one of the witnesses on August 18, and D testified on September 20.

D also confirmed she has short-term memory issues. When asked if she could estimate how much money was wrongfully taken from her by defendant, D replied, "As far as I'm concerned nothing was wrongfully taken from me that—that we—we helped each other."

Defendant called her own expert forensic accountant to testify to an alternative calculation of expenses and damages. Defendant's expert placed the economic damages from 2015 to 2020 at $94,620,[4] testified that even that number was "somewhat high," and suggested that defendant should be compensated for approximately $50,000 for caretaking services provided to D. Unlike the state's calculation, defendant's expert's calculation did not contemplate any restitution value over the time period between April and September 2021.

Defendant objected to the state's calculations of the damages, asserting that the state's determination rested on unfounded assumptions, such as that D used only food stamps to purchase food, that she never had a phone or cable TV, and that she would never have gifted any money to her daughter or grandchildren, which defendant argued was all directly contradicted by D's testimony. Defendant asserted that the amount of money misappropriated "is probably impossible to say" and that the best course of action for the court would be to "pick a conservative number and leave it at that." Defendant did not make an argument about the state's request for $14,660 that she allegedly took from the joint account after her release in the first case.

The trial court ultimately concluded that the full amount of economic damages totaled $109,280. The trial court reached that amount by concluding that defendant misappropriated $94,620 between 2015 and 2020 (the amount testified to by the defense expert) and $14,660 in 2021 and summing those amounts.

The court thus awarded D $109,280 in restitution. The trial court explained that it was "utilizing [defense

---

[4] Using $3,603.04 for D's income and $2,026.08 for D's expenses, the same as the lead investigating officer, defendant's expert subtracted D's monthly expenses from her income. Then, defendant's expert multiplied $1,577 by 60 months, thus, from 2015 to 2020, the misappropriated money was $94,620.

counsel's] conservative approach and request," but it did not consider compensation for defendant as D's caretaker and it decided to impose $14,660, which was the amount that the state had alleged that defendant had stolen from D between April and September 2021, in the dismissed case, Case No. 21CR50912. The court noted that it did not "think those [were] numbers that *** the defense can dispute because they're their own numbers *** for the most part, and the figure was provided by the [DOJ] in terms of money removed from the account after she had been admonished not to is a specific amount."

## ANALYSIS

Defendant's first assignment of error challenges the trial court's decision to award restitution to D, making a series of alternative arguments that rely on the trial court's authority to award D less than the full amount of her economic damages based on her written waiver. The restitution statute, ORS 137.106, provides, in relevant part:

"(1)(a)   When a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or as provided in paragraph (b) of this subsection, evidence of the nature and amount of the damages.

"(b)(A)   If the district attorney is unable to present restitution evidence at sentencing, within 90 days after sentencing the district attorney may file a motion requesting that either the judgment be amended to require restitution or that a supplemental judgment be entered requiring restitution. ***.

"*****

"(2)(a)   If the court finds from the evidence presented that a victim suffered economic damages, ***, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court. ***

"(b)   Notwithstanding paragraph (a) of this subsection, a court may order that the defendant pay the victim restitution in a specific amount that is less than the full amount of the victim's economic damages only if:

"(A)   The victim or, if the victim is an estate, successor in interest, trust or other entity, an authorized representative of the victim consents to the lesser amount, if the conviction is not for a person felony; or

"(B)   The victim or, if the victim is an estate, successor in interest, trust or other entity, an authorized representative of the victim consents in writing to the lesser amount, if the conviction is for a person felony.

"(c)   As used in this subsection, 'person felony' has the meaning given that term in the rules of the Oregon Criminal Justice Commission."

Restitution "means full, partial or nominal payment of economic damages to a victim." ORS 137.103(3). The legislature has defined "economic damages" for the purpose of restitution using "the meaning given that term in ORS 31.705" with exceptions not relevant in this case. ORS 137.103(2). Economic damages are defined in ORS 31.705(2)(a) as "objectively verifiable monetary losses ***." *State v. Carachuri*, 330 Or App 443, 446, 544 P3d 410, *rev den*, 372 Or App 588 (2024). In ORS 137.106(2)(b), the legislature expressly permits a trial court to impose less than the full amount of economic damages as restitution when a victim consents. First-degree criminal mistreatment, ORS 163.205, constitutes a "person felony" as defined in the Oregon Criminal Justice Commission's felony sentencing guidelines. OAR 213-003-0001(14). Thus, ORS 137.106(2)(b)(B) applies, and D had to consent in writing to restitution that was less than the full amount of economic damages.

Defendant and the state agree that the legislature's use of "may" in ORS 137.106(2)(b) grants a trial court discretion to impose restitution in an amount less than the full amount of economic damages if a victim consents, but they disagree about whether the trial court had discretion in this case. The trial court did not reach that issue because it concluded that the plea agreement prevented defendant from relying on D's written waiver to ask the court to exercise its discretion. We thus begin with that ruling.

As noted above, defendant argues that the plea agreement did not prohibit her from relying on D's release under ORS 137.106(2)(b)(B) to request no restitution. The

state responds that defendant had agreed as part of the plea agreement to pay "some amount of restitution" and that the trial court correctly concluded that, if defendant wanted the court to consider D's waiver and release, then defendant had to proceed to open sentencing because she would have been in breach of the agreement.

The meaning of a plea agreement presents us with a legal question, and we review a trial court's ruling about the terms of a plea agreement for legal error. *State v. Walsh*, 373 Or 714, 723, 570 P3d 617 (2025). The state suggests that we are bound by what it characterizes as a trial court fact finding that "defendant's plea agreement contemplated payment of at least some restitution[.]" That argument is inconsistent with *State v. Heisser*, 350 Or 12, 23, 249 P3d 113 (2011), *Walsh*, and our case law. The state makes no attempt to reconcile the inconsistency. The state's brief does not cite *Heisser* (the court issued *Walsh* after briefing was complete) or even acknowledge any of our cases that explain that the meaning of a plea agreement presents a legal question. The well-settled standard of review is for legal error.

We apply a similar methodology as we do when interpreting a contract, which "requires an examination of the objective representation of the parties, not their subjective or unspoken intents." *Heisser*, 350 Or at 20-21. The parties' communicated intent controls the terms of the contract, not their "undisclosed intents and ideas." *Id.* at 25 (internal quotation marks omitted). Accordingly, we start with the "what the words of the contract say, not what the parties say about it." *Id.* (same). If a contract "provision is unambiguous, the unambiguous meaning of the provision controls." *State v. Minor*, 297 Or App 461, 466, 443 P3d 695 (2019) (citing *Heisser*, 350 Or at 25-26). Contract law does not always provide an answer about the meaning of a plea agreement, however, because statutory and constitutional rights that apply in a criminal prosecution "'at times may override contractual principles.'" *Walsh*, 373 Or at 725 (quoting *Heisser*, 350 Or at 23).

*Minor* is particularly instructive here. In that case, the defendant pleaded guilty, and "the parties stipulated to a sentence that included probation, anger management,

parenting classes, forfeiture of all seized evidence, and payment of fines and attorney fees." *Minor*, 297 Or App at 463. In the plea offer, the state had "checked" a box that indicated that the state could pursue restitution in an "amount to be determined," and the judge left restitution open when the defendant formally accepted the plea deal and pleaded guilty. *Id*. Later, at a restitution hearing, the state told the court that the defendant had stipulated to restitution. *Id*. at 463-64. The state asked the court to notify the defendant that "he had two options: he could pay the restitution that the state had requested or he could withdraw his guilty plea and proceed to trial." *Id*. at 464. The defendant responded that he was challenging whether the damages the state claimed constituted restitution as a matter of law, not whether the court could impose restitution in general. *Id*. The trial court accepted the state's view of the plea agreement and, accordingly, told the defendant to choose. *Id*. The defendant chose to pay restitution and subsequently appealed. *Id*.

We reversed. *Id*. at 467-68. The defendant had agreed with the state that he would pay restitution in an amount to be determined per the restitution statute. *Id*. at 467. Thus, we explained, "the restitution provision in the plea agreement unambiguously indicates that the parties agreed that [the] defendant would be subject to an award for restitution for economic damage caused by his criminal conduct[,]" because the restitution statute "limits restitution to economic damages that could be recovered against the defendant in a civil action arising out of his criminal activity[.]" *Id*. at 466. Consistent with the Supreme Court's decision in *Heisser*, the plea agreement "did not waive" the defendant's "right to seek to limit an award of restitution to that which the statute permitted—*viz*., an award of economic damages." *Id*. at 467. Accordingly, we concluded that the trial court erred when it denied the defendant the opportunity to challenge the proposed restitution award. *Id*.

Here, the parties reached an agreement during a settlement conference. The court and the parties went on the record at the settlement conference to confirm the terms of the agreement. The court explained that the parties had agreed to leave restitution "open" and that the court would

determine the "amount, *if any*" at a later restitution hearing. (Emphasis added.) At the change of plea hearing, defendant submitted, and the court accepted, a written plea petition. The parties appear to agree that the plea petition is consistent with the parties' plea agreement. The plea petition does not mention restitution at all. The trial court's verbal statement at the settlement conference and the plea petition unambiguously established that the plea agreement "left open" restitution for the court to determine at a later hearing. That unambiguously established that the amount of restitution was not a term of the plea agreement. *See Minor*, 297 Or App at 466 (quoting *Heisser*, 350 Or at 23). Defendant retained the right to challenge the amount of restitution or to request a lesser restitution award than that requested by the state, including arguing for no restitution award.

The state suggests that one sentence in the plea petition indicates that defendant's plea agreement with the state included a term that prohibited defendant from asking the court to impose no restitution. The sentence relied on by the state provides,

> "I understand that the law requires the imposition of certain costs and fees in addition to any fines imposed, and that the law may also require suspension of driving privileges after conviction for certain offenses."

We disagree.

In criminal cases, costs, fees, fines, and restitution have different meanings, and the legislature addresses them in separate statutes. *See*, *e.g.*, ORS 161.665 (providing for a court's authority to impose costs, payable to the "Criminal Fine Account," and providing that costs include "a reasonable attorney fee" for court-appointed counsel); ORS 161.685 (listing fines, costs, and restitution separately and explaining effect of nonpayment); ORS 137.106 (restitution); *see also Minor*, 297 Or App at 463 (noting that the plea agreement included separate terms for restitution and "payment of fines and attorney fees"). The state does not explain why the parties would have called restitution a "cost or fee" in the plea petition. We conclude that the reference to a legal requirement to pay "certain costs and fees" in the plea petition does not constitute an agreement to pay restitution.

The case proceeded to sentencing immediately after the court accepted defendant's no contest pleas. Defendant agreed that restitution would be kept "open" for 90 days and be determined at a later restitution hearing. The restitution statute permitted the state 90 days after the entry of the judgment to present evidence of economic damages. ORS 137.106(1)(b)(A). Thus, defendant's "agreement" to keep restitution open for 90 days simply recognized what the restitution statute provided. Defendant did not agree to waive any argument about the amount of restitution as part of the plea agreement.

Defendant did not subsequently agree to any amount of restitution during the change of plea and sentencing hearing. Indeed, the state expressly acknowledged during the sentencing hearing that the court would determine restitution at a later hearing. Thus, we agree with defendant that the record shows that the parties had no agreement on the amount of restitution, and the plea agreement did not prohibit defendant from submitting D's waiver and asking the court to exercise its discretion to impose a restitution award less than the full amount of economic damages under ORS 137.106(2)(b). *See Minor*, 297 Or App at 467 (concluding that "by agreeing to pay restitution in accordance with [ORS 137.106(2)(a)], [the] defendant maintained the right to seek to limit an award of restitution to that which the statute permitted"); *see also State v. Nosbisch*, 298 Or App 1, 5, 445 P3d 327 (2019) (explaining that the state, as the party with the burden, failed to create a record that the defendant had waived the right to contest restitution by accepting a plea offer when the record did not contain the plea offer and nothing else in the record establish the defendant's waiver).

The state argues that defendant's silence in response to two statements by the trial court established that defendant had agreed to pay some amount of restitution as part of the plea agreement and that the trial court correctly concluded that "a waiver and release erasing all restitution" would breach the agreement. First, the state notes that defendant agreed to leave restitution open, and defendant did not respond when the trial court waived the imposition of fines at sentencing because defendant would owe restitution.

Second, during the restitution hearing, the trial court concluded that D's release and waiver violated the plea agreement and offered to let defendant proceed to open sentencing, apparently as a condition of considering the release and waiver. Defendant did not directly respond to that statement.

We disagree with the state's arguments. First, as we explained above, restitution was not a term of the plea agreement. Second, viewed in context, defendant's silence in response to the trial court's two statements reflects defendant's recognition that her mother suffered economic damages as a result of the two first-degree criminal mistreatment offenses to which she had pleaded no contest. Defendant agreed at the restitution hearing that she caused D economic damages, although she contested the amount of economic damages. We cannot read into her silence a contractual term that is inconsistent with the unambiguous terms of the plea agreement placed on the record by the trial court at the settlement conference. Defendant's reliance on her mother's testimony and the written waiver to ask the court to exercise its discretion under ORS 137.106(2)(b)(B) and impose no restitution, or restitution less than the full amount of economic damages, did not violate the plea agreement.[5]

The trial court erroneously concluded that defendant had violated the plea agreement. It told defendant that she could proceed to open sentencing if she wanted the court to consider her mother's written waiver and the defense request to impose no restitution. As the prosecutor stated later in the hearing, it was necessarily implicit in that statement that the trial court would not consider D's waiver or whether to exercise its discretion under ORS 137.106(2)(b)(B), if defendant wanted the benefit of the plea agreement. That was error.

---

[5] The state noted at oral argument that the same trial judge presided over all proceedings in this case, including the settlement conference, with the parties' consent. The state asks us to infer from that fact that the trial judge knew the terms of the plea agreement. The state argues that we should defer to the trial judge's recollection of the agreement at the restitution hearing. But the trial judge had explained the terms of the plea agreement on the record at the settlement conference. The judge said that the parties agreed to keep restitution open. The judge did not say that defendant had agreed to pay restitution or not to contest restitution. The fact that the same judge later believed that defendant had agreed to pay restitution or not to contest restitution does not change the unambiguous terms of the agreement as described at the settlement conference.

The trial court then imposed a restitution award. The trial court did not understand when it imposed the restitution award that the plea agreement permitted it to consider D's waiver. The parties contest on appeal the validity of D's waiver, disputing whether D's cognitive deficits would permit the trial court to reject it and whether defendant had to provide consideration to D in exchange for the waiver and release. They also disagree about whether the trial court could impose restitution at all if the waiver was valid. The trial court did not reach those issues below. We do not reach them here. The parties may raise those issues on remand.

In defendant's second assignment of error, she argues that the trial court erred when it calculated the amount of economic damages caused by D's conduct. The state argues that defendant invited any error or, at least, failed to preserve it. We agree with the state that defendant failed to preserve the challenge she makes on appeal, and she does not request plain error review. *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (explaining that we "ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked" us to do so). We thus reject the argument.

At the beginning of the restitution hearing, defendant made alternative arguments challenging the restitution award. One of those arguments was that the trial court lacked authority to impose restitution because "legally a joint account is owned by both parties and either party can spend the money out of that [account] in any way they see fit." The trial court rejected that argument by noting that it had already found defendant guilty of criminal mistreatment based on misappropriating her mother's money from the joint account, as a result of defendant's no contest plea.

As the restitution hearing proceeded, defendant objected to the state's calculation of damages but appeared to agree that she had caused some economic damages to D through her criminal conduct. She presented her own expert, who testified that defendant had caused less economic damages than the state claimed. The court imposed a restitution award consistent with the defense expert's calculation of the amount. The trial court asked the defense if

they had anything to add, and defendant did not contest the trial court's calculation of the lower restitution award.

On appeal, defendant argues that the trial court erred in its method of calculation damages because the state failed to establish a "nonspeculative causal relationship between the defendant's *criminal* activities and economic damages." (Emphasis in briefing.). Defendant cites a series of cases in support, including *State v. Parsons*, 287 Or App 351, 357-59, 403 P3d 497, *adh'd to on recons*, 288 Or 449 (2017), *rev den*, 362 Or 545 (2018), and *State v. Akerman*, 278 Or App 486, 490, 380 P3d 309 (2016).

We have reviewed the record and conclude that defendant failed to preserve that argument. After the trial court determined that economic damages were appropriate, defendant presented testimony from an expert who affirmatively suggested a method of calculating economic damages and proposed an amount of economic damages based on that method that was less than the amount requested by the state. On appeal, defendant does not contest whether she caused D economic damages by spending her mother's money from the joint account but takes issue with the way that the trial court calculated the damages.

However, the trial court effectively agreed with the defense expert and rejected the amount requested by the state. Defendant did not alert the court that it should employ some other method of calculating economic damages, and defendant did not make an argument that either the state or the trial court would have understood to be based on the principles discussed in *Parsons* and *Akerman*. Thus, on this record, we think the trial court would be "taken aback to find itself reversed *on this issue, for this reason*[.]" *State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) (emphasis in original). Thus, the second assignment of error is unpreserved, and we reject it.

In defendant's third assignment of error, she argues that the trial court plainly erred when it imposed a restitution award of $14,660 for conduct related to charges that were dismissed as a part of her plea agreement and conduct that does not fall within the period of criminal conduct for which

she pleaded no contest. The state responds that we should affirm because the record is subject to competing inferences about whether defendant agreed to pay restitution for the dismissed charges as part of the plea negotiations. We conclude that the error is plain, but we decline to exercise our discretion to correct it, for the reasons explained below. We thus reject the third assignment of error.

To reach an unpreserved error as plain error, we must determine that the assigned error is (1) one of law; (2) obvious and not reasonably in dispute; and (3) apparent on the face of the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Even if an error meets those criteria, we must still choose to exercise our discretion to correct the error and explain our reason for doing so. *Id.* at 382. When deciding whether to exercise our discretion, we consider, among other factors, the gravity of the error, the competing interests of the parties, the nature of the case, and the ends of justice. *Id.* at 382 n 6.

For a trial court to award restitution, it must find (1) criminal activities; (2) economic damages; and (3) a causal relationship between the first two. *State v. Kirkland*, 268 Or App 420, 424, 342 P3d 163 (2015). Generally, a trial court may "conduct additional fact-finding regarding the amount of damages during sentencing[,]" based on "any evidence that it ordinarily would [consider] at a sentencing hearing." *Id.* at 425. But a trial court cannot order a defendant to "pay restitution for pecuniary damages arising out of criminal activity for which [the defendant] was not convicted or which [the defendant] did not admit having committed." *Id.* And "[a] trial court may not impose restitution based on criminal activities that occurred outside the time period covered by a defendant's plea agreement." *State v. Lobue*, 304 Or App 13, 15, 446 P3d 83, *rev den*, 367 Or 257 (2020); *see also State v. Dorsey*, 259 Or App 441, 445-46, 314 P3d 331 (2013). In *Dorsey*, for example, we held that the trial court plainly erred when it awarded restitution against the defendant for criminal conduct constituting first-degree theft spanning a 65-day period even though the defendant admitted in her plea petition to criminal conduct over only a 16-day period. *Dorsey*, 259 Or App at 442.

Here, the state told the trial court at the restitution hearing that defendant had "agreed to restitution in the other case that was dismissed, 21CR50912." The state presented evidence that defendant had spent $14,660 of her mother's money from the joint account that she shared with her that was not for her mother's benefit. The trial court imposed $14,660 for conduct between April 2021 and September 2021 as part of the restitution award. Defendant did not contest the state's representation that she had agreed to restitution in the dismissed case.

The trial court plainly erred when it imposed restitution for economic damages on the dismissed case because defendant had not been convicted of that conduct and did not admit on the record to committing that conduct, as we have previously recognized. *Id.* at 445-46; *see also State v. Muhammad*, 265 Or App 412, 414-15, 335 P3d 1281 (2014) (accepting state's concession that the trial court plainly erred by imposing "restitution based on activities that occurred outside the period of time covered by the defendant's plea agreement").

We decline to exercise our discretion to correct the error, however. The record supports an inference that defendant agreed off the record that she caused D economic damages through her conduct, including by spending $14,660 between April 2021 and September 2021. Defendant did not contest the prosecutor's representation at the sentencing hearing that she had agreed to pay restitution for the dismissed case. That is consistent with defendant's strategy of presenting evidence that she caused D economic damages by spending D's money but contesting the restitution award by relying on D's written consent to request no restitution, which defendant submitted under both case numbers. Defendant's reliance on D's waiver and release in both cases permits an inference that she agreed that she had caused D economic damages in both cases. We thus conclude that the nature of the case, the ends of justice, and the competing interests of the parties do not justify exercising our discretion to correct the error.

In sum, we vacate and remand the trial court's supplemental judgment because the trial court erred when

it concluded that defendant's submission of D's waiver and argument that it should impose no restitution violated the plea agreement. We do not reach defendant's second assignment of error on the merits because it is unpreserved, and defendant has not requested plain error review. Finally, we decline to exercise our discretion to correct the plain error in defendant's third assignment of error. On remand, the trial court need not re-determine the full amount of economic damages under ORS 137.106(2)(a). The parties may contest the effect of the waiver under ORS 137.106(2)(b).

Supplemental judgment vacated and remanded; otherwise affirmed.